Simon. J.
delivered the opinion of the court.
This is an action brought by the joint administrators of the succession of E. "W. Ripley, deceased, for the purpose of obtaining a partition of the property in community between the deceased and the defendant, after having sold so much of the said community property as may be sufficient’ to satisfy the debts thereof.
They represent that the deceased intermarried with the defendant on the 29th of July, 1830, that a community of acquets and gains existed between them; that said community is largely indebted, and that the defendant having been decreed to have accepted the community, is liable for her portion of the debts thereof; the petition concludes with a prayer for the sale of a part of the common property, and for a partition of the residue.
The defendant’s answer first alleges that the plaintiffs as administrators cannot maintain an action of partition, and that the court of probates is without jurisdiction in such matters. She further avers that complete inventories of the community property have not been made; that a partition cannot be made until the inventories are completed, and that all the property which the deceased died possessed of, belongs to the acquets and gains, except some specified as belonging to herself. She denies the indebtedness of the community as stated in the petition, and states that the succession of her husband owes to the community a sum of $30,000, used to pay his individual debts; that a tract of land in Illinois has not been inventoried; and prays that the whole property inventoried as belonging to the succession of E. ~W. Ripley, be adjudged to belong to the community of acquets and gains, and that the same be partitioned according to law.
The probate court overruled the plea to its jurisdiction, tried the [241] cause on its merits, and after indicating in its judgment the property which belongs to the spouses respectively, ordered that all the property inventoried as belonging to the succession of the deceased not therein decreed to be the separate property of the parties, be considered as community property and be partitioned as such. From this judgment the defendant appealed.
Our attention is first drawn to the defendant’s exception to the jurisdiction of the probate court; and it has been most strenuously insisted on her part that the court of probates has no jurisdiction over cases like the present; ratione materia, because they are not partitions of successions; nor ratione persona, because the surviving spouse does not claim as heir, nor hold any fiduciary character under the control and supervision of that court; and that a fortiori, it is without jurisdiction in an action where the surviving spouse is cited to partake the community with the heir of the deceased, and to decide what portion of the property belongs to the community, and which is the separate property of either spouse.
The object of this action is clearly for a settlement and liquidation of the community formerly existing between the deceased and the defendant, and for *152 a partition of the residue after satisfaction of the common debts. Those debts, though due by such community, are generally set up by the creditors against the succession of the husband, who, as master of the community during its existence, is always responsible for their payment. After its dissolution by the death of the husband, it is uniformly understood that his estate is hound to pay the debts contracted during the marriage; if it he dissolved by the death of the wife, the survivor is generally alone applied to for the satisfaction of the community debts; and the wife or her representatives, although their distinct interest to the community attaches at the dissolution of the marriage, subject to their right to renounce and be exonerated from [248] the payment of the community debts, have nothing to claim out of the acquets and gains, until such debts are paid or liquidated. The succession of the husband, is therefore so far connected with the community as' to form together at the time of his death, an entire mass called his estate, which is not only liable for the payment of the common debts, hut also for the portion of the wife or her heirs to the residue, if they have not renounced. The widow or her representatives have consequently such an interest in the mass of the estate or succession of the husband, with regard to whom no distinction is made between his separate property and that of the community until the net proceeds or amount of the acquets and gains are ascertained, that their assistance at the inventory and their concurrence at all the proceedings relative thereto, which are to be carried on contradictorily with them, are generally required. All such proceedings take place before the court of probates which, according to law, has exclusive jurisdiction of all the matters concerning the estate, particularly in those cases where it is in a course of administration; and it does not occur to us that separate proceedings can properly be had in relation to the community, until after the settlement of the husband’s estate and the payment of the common debts, a division of the residue of the acquets and gains, is to he made between the heirs of the deceased and the surviving spouse; and even then, the affairs of the husband’s estate administered under the control and supervision of the court of probates, are to be inquired into and sometimes fully investigated. In this case, the estate of General Ripley, is administered as an insolvent one; the prayer for a partition of the community is only incidental to the administration of the estate; and it seems to us that, if we were to declare the court of probates to be without jurisdiction, this would be in direct opposition to the intention of the lawmaker whose object is clearly to bring before the courts of probates all the matters relative to estates administered under their superintendence.
[249] But it is contended that this would be giving to the court of probates the right of trying questions of title: probate courts have certainly no power to try titles to real estate, and to decide directly on the validity of such titles; but, as this court has said in the case of Gill v. Philipps et al. 6 Martin, N. S. 298, “those courts possess all powers necessary to carry their jurisdiction into effect, and when in the exercise of that jurisdiction, questions arise collaterally, they must, of necessity, decide them, for if they could not, no other court could: ” And, “ any other construe *153 tion would present a singular species of judicial power — the right to decree a partition, without the authority to inquire into the grounds on which it should be ordered, or the portions that each of the parties should take. The end would thus be conceded without the means.” Baillo v. Wilson ot al., 5 Martin, N. S. 217. We are satisfied that whenever a question of title to real property and slaves arises collaterally in the court of probates, and an examination of it becomes necessary in order to give the court the means of arriving at a correct conclusion on matters of which it has jurisdiction, it must take cognizance of such title, at least for the purpose of ascertaining which property belongs to either of the spouses respectively or to the community. In the case of McCaleb v. McCaleb, 8 Id. 465, the same doctrine was again sanctioned by this court, who held, that courts of probates have authority to inquire collaterally into the character of sales and conveyances, which compose a part of the property forming the entire amount to be partaken, in order to enable them to know the amount of the whole estate. See also 12 La. Rep. 218.
In the case of Turner v. Collins, 1 Mart. N. S. 370, it was decided that courts of probates had not exclusive jurisdiction in a suit for the purpose of dividing property belonging to a legal partnership or community, between the surviving spouse and the heirs of the deceased; but this, in our opinion, fully recognizes the jurisdiction of the probate court. The case of [250] Broussard v. Bernard, 3 Mart. N. S. 37, establishes also the concurrent jurisdiction of the district court in such cases. So it was again decided in the case of Gague v. Gague, 3 Id. 172; 7 Id. 470. And in the case of German v. Gay et al., 9 La. Rep. 584, this court had again occasion to declare that the probate court had not exclusive jurisdiction in a suit for a partition of the community, meaning that its jurisdiction is concurrent with that of the district court. We cannot therefore hesitate to conclude that the present case is properly within the jurisdiction of the* court of probates, that the matters in controversy in this action are peculiarly within the province of such courts; although concurrent jurisdiction may be given to the ordinary tribunals; and that the judge a quo did not err in overruling the defendant’s declinatory exception.
The only bill of exceptions which we have deemed necessary to notice, is one taken to the opinion of the lower court permitting the plaintiffs to introduce in evidence the marriage contract of the parties. The objections made to this document are that it was not set up in the pleadings, did not correspond with the allegations, and had the effect of altering the substance of the demand; we think the probate judge did not err: it is true this marriage contract is not specially mentioned in the petition; but the action itself is such as to presuppose that the plaintiffs intended to produce all the titles and documents necessary to establish their right to the separate property of the deceased, so as to show that it makes no part of the community; and the defendant’s issue demonstrates sufficiently that she expected said marriage contract to be the principal subject in controversy on the trial of the cause; her allegation that all the property carried on the inventory of the estate, belonged to the community, necessarily required the production of the contract to which *154 she was a party; she was aware of its existence, she knew that the community could not be settlod without recurring to this document, and we cannot believe that she was taken by surprise.
[251] On the merits, the appellant urges that the court below erred: 1. Because it decreed the Bedwood tract of land to be the separate property of the deceased. 2. Because certain negroes purchased or taken in exchange during the marriage from Ira Bowman, and another received in payment from Hannah Musgrove in part satisfaction of a debt due by her to Gen. Bipley, ought to be declaimed to belong to the community of acquets and gains.
I. This point arises from the marriage contract produced by the plaintiffs, which, with regard to the Bedwood tract of land, contains the following clause: “ The said E. W. Bipley declares that he owns and brings into the marriage the following property and rights, to wit,” “ A plantation on Bedioood, parish of East Feliciana, of twelve hundred and eighty acres with the buildings, improvements and appurtenances.” This clearly shows that the deceased owned this property at the date of his marriage (29th July, 1830), the marriage contract being conclusive proof on this subject; but the evidence further establishes that as early as the 14th July, 1829, a written agreement wgs entered into between the deceased and his vendor, Ingraham, for the purchase of this plantation, on certain tex-ms which are specified in the act signed by both parties; the sale, in our opinion, was complete before the marriage, and the passing of a notarial deed of sale after the marriage was only for the purpose of perfecting the evidence of the contract. If the husband owed any part of the price (this fact also appears by the maiTiage contract) and paid it during the marriage out of the common funds, this may be a charge against him in favor of the community; but he is nevertheless entitled to the land as his separate property.
II. This also arises from a clause in the maxTiage contract, which after specifying the incox'poreal lights or claims of the husband, goes on to say: “ The following claims set apa/rt to the purchase of negroes with, to wit, Sc. Sc." The claims alluded to consisted in a dividend of about $4000, [252] allowed by act of Congress appropriating $9350 to the ci-editors of Bennett & Martee, and in a claim against Mrs. Musgrove for about $1500. It has been shown that the slaves purchased from Ira Bowman were taken in exchange or paid for by the transfer of the sum of $3500 out of the funds coming to the deceased as a creditor of Bennett & Martee; and that the slave purchased of Mrs. Musgrove, was received by the' deceased in payment of a part of the claim mentioned in the marriage contract. These slaves, under the circumstances, do not, in our opinion, form any part of the community of acquets and gains, not only because it cannot be controverted that the rule, th’at property acquired during marriage ought to be considered as common to both husband and wife, although purchased with the separate funds of one of them, is only applicable to acquisitions made by purchase, and does not include things which may be received by either of them in exchange or in payment of money due to them on their separate and individual rights; 1 La. Rep. 520; 3 Id. 231; Case of Dominguez v. Henry *155 Lee & Go. lately decided by this court; aud 12 Toullier, No. 154; but more particularly because the investment of the money proceeding from the claims in question had been provided for and agreed upon between the spouses in their marriage contract. According to the art. 2393 of the La. Code, “ married persons may by their marriage contract, modify the legal community, as they think fit, either by agreeing that the portions shall be unequal, or by specifying the property belonging to either of them, of which the fruits shall not enter into the partnership.” We must, therefore, consider the clause under consideration as a modification of the legal community, so far as the negroes purchased with the claims set apart in the marriage contract for that purpose are concerned, and if so, they cannot belong to the said community.
Tho appellees have prayed in their answer that the judgment of the probate court be so amended as to allow them the negroes Rhoda and [253] Rhoda Ann as the separate property of the deceased; but an attentive perusal of the evidence found in the record has not satisfied us that, they do not belong to the community.
We therefore conclude that the judgment of the court below is correct, according to the facts and law of the case.
It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be affirmed, with costs.