[No. 1503.    Decided December 3, 1894.]

LEWIS H. BOLTON ET AL., *Appellants, v.* LA CAMAS WATER
POWER COMPANY ET AL., *Respondents.*

PUBLIC LANDS—TITLE OF HOMESTEADER—COMMUNITY PROPERTY.

The legal title to lands acquired under the homestead laws of the
United States does not vest until the issuance of patent by the gov-
ernment.    (DUNBAR, C. J., dissents.)

Although a man and wife may have lived upon and improved pub-
lic land for the length of time requisite for the acquisition of title
under the homestead laws of the United States, the community ac-
quires nothing more than an equitable interest therein ; and, upon
the death of the wife prior to final proof and the issuance of patent,
her husband will, upon the issuance of patent, take the full legal title ;

and, upon his conveyance of the land to a grantee ignorant of the equities of the wife's heirs, both the legal and equitable titles would pass. (DUNBAR, C. J., dissents.)

*Appeal from Superior Court, Clarke County.*

*G. H. Funk* and *N. H. Bloomfield,* for appellants.

Lands acquired under the United States homestead act are community property. *Philbrick v. Andrews,* 8 Wash. 7 ; see, also, *Wilcox v. Jackson,* 13 Pet. 498.

This case presents a state of facts in which the community had earned the land by performing the necessary conditions of residence and cultivation, but in which the paper evidence of title did not issue until after the death of one member of the community, and under this state of facts the appellants assert that the lands in controversy in this action were "acquired" within the meaning of the community property law by James H. Bolton and Julia Catherine Bolton at the date of the completion of the five years' residence and cultivation required by the Homestead act. *Brazee v. Schofield,* 2 Wash. T. 209 ; *Roeder v. Fouts,* 5 Wash. 135 ; *Wirth v. Branson,* 98 U. S. 118 ; *Hodge v. Donald,* 55 Tex. 344 ; *Porter v. Chronister,* 58 Tex. 53 ; *Bellinger v. White,* 5 Neb. 399 ; *United States v. Freyberg,* 32 Fed. 195 ; *Railroad Co. v. Sture,* 32 Minn. 95 ; *Webster v. Bowman,* 25 Fed. 889 ; *Newkirk v. Marshall,* 10 Pac. 571 ; *Nycum v. McAllister,* 33 Iowa, 374 ; *Iowa Homestead Co. v. Webster County,* 21 Iowa, 221 ; *Goodlet v. Smithson,* 5 Port. (Ala.) 245 ; *Wilkinson v. Wilkinson,* 20 Tex. 237 ; *Manchaca v. Field,* 62 Tex. 135 ; *Caruth v. Grigsby,* 57 Tex. 259 ; *Cannon v. Murphy,* 31 Tex. 405 ; *Wright v. McGinty,* 37 Tex. 733 ; *Carter v. Wise,* 39 Tex. 273 ; *Sturr v. Beck,* 133 U. S. 541.

The patent to the land in question, when issued, related back to the time of entry, and for the purpose of validating any transfers of the claimants' rights, whether voluntary or by act of law (except such transfers as were expressly inhibited in the act), would take effect as of the time of making the entry and would thus give these appellants a legal title to their portion of their mother's interest in the said premises from the date of the issuance of patent. *Landes v. Brant,* 10 How. 348 ; *French's Lessee v. Spencer,* 21 How. 228 ; *Railway Co. v. Gordon,* 41 Mich. 420 ; *Sturr v. Beck,* 133 U. S. 541 ; *Railroad Co. v. Sture,* 32 Minn. 95 ; *Jackson v. Ramsay,* 3 Cow. 75.

The husband holds as trustee for the community, where he obtains paper title to homestead lands after the death of his wife, the com-

munity having advanced the consideration to the government for said lands, *McAlister v. Farley,* 39 Tex. 553.

*E. E. Coovert,* for respondent.

Title does not pass from the United States by a conditional grant of public lands so long as any act required of the grantee as a condition of the grant remains uncompleted, and in the case at bar the last condition required of Bolton was the making of final proof in the United States land office, which was not done until June, 1872. *Hershberger v. Blewett,* 55 Fed. 180; *Railroad Co. v. McShane,* 22 Wall. 444; *Shepley v. Cowan,* 91 U. S. 330; *Colorado Co. v. Commissioners,* 95 U. S. 265; *Frisbie v. Whitney,* 9 Wall. 187.

The opinion of the court was delivered by

HOYT, J.—This action was brought to recover a one-third interest in certain lands described in the complaint. The plaintiffs claimed as heirs of their mother who, it was alleged, was the owner of an undivided half of the lands at the time of her death. The cause was submitted upon an agreed statement of facts, from which, among other things, it appeared that James H. Bolton and Julia Catherine Bolton, his wife, established a residence upon the lands in question in August, 1865, and that they lived thereon in full compliance with the requirements of the homestead law of the United States until the 15th day of June, 1871, when the said Julia Catherine Bolton died. That thereafter, on the 14th day of June, 1872, said James H. Bolton made final proof as required by the statute, and that thereafter, on September 19, 1872, a patent for said lands was issued to and in the name of said James H. Bolton. That the plaintiffs were children of the said James H. and Julia Catherine Bolton, and that they were minors until after the issue of said patent.

It further appeared from the agreed statement that after the issue of the patent, said James H. Bolton was married to one Margaret Miller, and that thereafter he and his wife, Margaret, executed and delivered a warranty deed to said premises and received full value therefor ; that at the time of said conveyance the grantee therein had full knowledge of all the facts in relation to the acquisition of the land so conveyed, that the defendants were purchasers for value of the

title so surveyed and at the time of making the purchase had no knowledge whatever as to the manner in which the title was acquired, further than that disclosed by the records of Clarke County, which upon their face showed a perfect chain of title from the government to their grantors. Other facts were agreed upon, but it is not necessary to state them as the legal questions which we shall discuss arise upon those above recited.

It will be seen that the record title is perfect in the defendants, and that they and their grantors had no notice of any facts which in any way tended to impugn the validity of such record title, and that they were purchasers for value. It must follow that, if the said James H. Bolton was vested with the legal title by the patent issued by the government, such legal title is now vested in the defendants, and, being so vested and they having no knowledge of any equities which could in any manner affect such legal title, it is perfect in them, whatever may have been the rights of the said Julia Catherine Bolton as the wife of said James H. Bolton, or of their children.

The important question therefore is as to whether or not the entire legal title was vested in James H. Bolton, or in himself jointly with the said Julia Catherine Bolton or her children. The appellants in their brief have elaborately argued in favor of the proposition that the substantial title passes from the government, under the homestead law, upon the completion of the five years' residence and cultivation, as therein provided. This is an important question, and the authorities in reference thereto cannot be harmonized. But it is not necessary that it should be decided in the case at bar, for, so far as we are advised, none of the cases go to the extent of holding that the legal title passes before proof of such residence and cultivation has been made and filed as required by law; and most of the cases hold that such legal title does not pass until the issuance of the patent.

The rulings as to the time when title passes have not been the same under the homestead act as under the donation law. As to the latter, most of the courts have held that upon the

completion of the residence and cultivation required, the title both legal and equitable vests in the settler, and that the issuance of the patent thereafter is but evidence of, and not the conveyance of, title. While under the former, they have held that though the beneficial title may pass upon the completion of the residence and cultivation, the legal title does not so pass until proof has been regularly made and patent issued. That the legal title does not pass under the homestead law until proof of compliance with the statute seems to us evident from the language of the act. It provides that at any time within two years after the completion of the five years' residence and cultivation proof thereof may be made, and that thereafter a patent will issue. It seems to follow, by necessary inference, that if proof is not made within the two years required after the completion of the residence and cultivation, all rights growing therefrom may be forfeited. And in case of such forfeiture no steps are necessary to reinvest the entire title, both legal and equitable, in the government, excepting such acts and declarations as it deems proper for that purpose.

But if the legal title had passed to the settler it could only be divested by some act of his, or by the adjudication of a court. Hence the acts and declarations of the executive branch of the government could not have that effect. But all the courts hold that the rights of the settler can be terminated upon his default by such acts and declarations at any time before final proof has been made. It must follow that the legal title does not pass until such proof is made, whatever may be the rule as to the equitable title. The general rule in regard to the time when the title becomes perfected in the settler is that it will become so vested when he has performed every act on his part to be performed. From which it would seem to follow that even the equitable title would not pass under the homestead act until proof had been made as required. The right to the equitable title would be established by the residence and cultivation, but it would not vest in the settler as against the government until

it was made aware of said fact by the proof required by the statute.

If what we have above stated as to the time when the title vested is true, the legal, if not the equitable, title remained in the government until proof of compliance with the statute. But such proof was not made until some time after the death of Julia Catherine Bolton, and since by her death the community was dissolved the legal title could not, at the time it passed from the government, vest in it or its members. And since it must vest somewhere, it must be held to have vested where by the paper title it purported to vest, that was in James H. Bolton.

We therefore feel compelled to hold that, wherever may have been the beneficial interest as between the said James H. Bolton and the estate of his wife, the legal title fully vested in him ; and such being the fact, a conveyance by him would pass a perfect legal title, and as incident to the passing of such perfect legal title, the entire title, both legal and equitable, would pass to one having no knowledge of any equities which could affect the legal title. And since from the stipulated facts the defendants were the holders of such legal title, discharged of any such equities, their title was perfect as against the plaintiffs.

The judgment will be affirmed.

STILES and SCOTT, JJ., concur.

DUNBAR, C. J. (*dissenting*).—I am unable to agree with the majority opinion in this case. While it is true that the paper title to a homestead does not pass until proof is made, or for that matter, until patent issues, yet it is equally true that the courts have held, under laws for obtaining title to the public lands, that where the applicant has done all that the law requires him to do, the proof is only evidenciary matter which establishes or makes known the fact which already existed. This is the doctrine of common sense. It is the actual *doing* of the things required, and not the *proof* of the doing, which meets the requirements of the law. When all

is done which can be done, the government simply holds the land in trust until the proof is made.

In *Stark v. Starrs*, 6 Wall. 402, the United States supreme court asserted the rule, that the right to a patent once vested is treated by the government when dealing with the public lands as equivalent to a patent issued; and further, that when in fact the patent does issue it relates back to the inception of the right of the patentee, so far as may be necessary to cut off intervening claimants. And in discussing the principles involved in that case, the court said:

" These are only applications of the well-established doctrine that where one party has acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title."

And so I say right here, that the right to a patent vested in Bolton when he had complied with the provisions of the homestead act, which required him to cultivate and reside upon the land in question for the five years immediately succeeding his entry upon the same; and that, when the patent did issue, it related back to the inception of the right of the patentee, and that right was completed when he had met the requirements prescribed by the act, by a residence and cultivation for five years; and that, from the time that this right to a patent vested in him by reason of his compliance as aforesaid, up to the date that the patent issued, the government stood in the relation of a trustee to him, bound to issue the patent upon proof being made in compliance with the requirements of the statute.

This doctrine was followed in *Barney v. Dolph*, 97 U. S. 652, where the rule was repeated, that when the right to a patent once became vested in a settler under a law, it was equivalent, so far as the government was concerned, to a patent actually issued.

In *Stoddard v. Chambers*, 2 How. 284, it was held that the issuance of a patent is a mere ministerial act.

In the case of *United States v. Freyberg*, 32 Fed. 195, the homestead applicant had sold timber off of his homestead

prior to his proving up and receiving a patent therefor. Subsequently, however, and subsequent to the commencement of the action against him by the United States for the value of the timber, he made his homestead proof, and the court held in that case that by virtue of the proof which was made, as I have before said, subsequent to the sale of the timber, and even subsequent to the commencement of the action, his rights dated back to the original entry, and consequently protected the occupant and purchaser from liability for acts done on the land while he was holding under his homestead entry ; and the court there stated the rule that where the right to a patent has once become vested in a purchaser of public lands, it is equivalent, so far as the government is concerned, to a patent actually issued ; and that the execution and delivery of the patent, after the right to it had become complete, are the mere ministerial acts of the officer charged with that duty. This case, it seems to me, is squarely in point, for it was not from the time that the patent issued or that the proof was made that the court held the right to a patent had become vested, but from the time that the provisions of the homestead law had been complied with. In closing the opinion the court in that case said :

"The only ground urged by the attorney for the United States in opposition to these views was the fact that the patent has not yet been issued, and, therefore, that the legal title has not become vested in the purchaser. But this contention, as we have seen, is not tenable, in view of the legal proposition laid down in cases that have been cited, that the government now holds the legal title merely in trust for the purchaser, whose right to a patent has become vested, and is equivalent, so far as the government is concerned, to a patent actually issued."

It is true that the cases of *Barney v. Dolph* and *Stark v. Starrs*, cited above, were cases under the donation law, and it is equally true that some of the provisions of the donation act are different from those of the homestead or preëmption laws ; but these principles, which were enunciated by the courts in the cases cited above, are equally applicable and as logically flow from the provisions of the homestead laws as

they do from those of the donation law which was being considered at the time.

Our community property law provides that all property and pecuniary rights owned by the husband before marriage, and that acquired by him afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, shall be his separate property, which he can manage, alienate, etc., in any manner he may see fit, without the wife joining in *such management*, or alienation, etc.; and the same character of property when acquired by the wife is her separate property, subject to her exclusive management, alienation, etc.; and it expressly provides in the most sweeping manner that property not acquired or owned as prescribed above, but which is acquired after marriage by either husband or wife, or by both, is community property.

If the conclusion reached by the majority is correct, then community property which is merged in the improvements that are placed upon a homestead is lost to the wife, or the wife's heirs rather, in case of the death of the wife. For it is not alone the land which constitutes the value of the homestead at the time proof is made or the patent issues ; but it is the land *and* the improvements. The latter may far exceed, and, in fact, generally do exceed in value, the price of the land before it receives the improvements. A husband and wife may put all their labors, or the fruits of their labor, for five years into a homestead. They may, in fact, put all the accumulations of a lifetime into improvements upon a homestead, and such improvements may represent all their community property, be it more or less ; yet, if the wife were to die, her heirs would receive nothing, but the heirs of a wife whom the husband might marry the day before the final proof was made would supplant her. And the irresistible logic of the position goes further than this, for if the husband were to divorce his wife, the result would be the same, for there would be no equitable interest of the wife in the homestead which the court could protect or dispose of, according to this contention. And if the husband had a statutory ground for divorce, the wife would be left

penniless, even though there might be thousands of dollars invested of her community property in the improvements on the homestead.

It is conceded by respondents that under the law as construed by this court in *Philbrick v. Andrews*, 8 Wash. 7 (35 Pac. 358), the homestead is community property after the final proof. Of course, if it is community property, under the statute the deed from the husband would not convey title unless the wife joined in the same. Can it be possible that the wife's interest in community property depends upon so frail a tenure as the mere proof of facts already admitted to exist? Is the principal virtue in the proof of residence, cultivation and improvement instead of the actual residence, cultivation and improvement? The proof is necessary, of course, but its only office is to satisfy the government that there has been a prior compliance with the requirements prescribed. Consequently, all the rights which the applicant had attached when he had in good faith met these requirements, and must necessarily date back to that time.

And that this was the intention of congress is to my mind plainly indicated by the provisions of the act itself. Sec. 2291 of the Revised Statutes provides that this proof may be made at the expiration of five years, and it may be made at any time between the expiration of five years from the date of entry and the expiration of seven years, allowing two years after the requirements have all been complied with on the part of the applicant to go through the formality of making proof of what had been done during the first five years. Indeed, the requirements are at an end at the expiration of five years. The residence and cultivation may cease during these two additional years. The five years are given for the actual and substantial compliance with the provisions of the law, which are presumed to show good faith on the part of the homestead applicant; and the two succeeding years are allowed, if desired, to present the proof of what was done during the first five. It must be observed that there are no requirements concerning the last two years. It is not even

necessary that the applicant should reside on the land, but the proof must be that he has resided upon and cultivated the same for five years immediately preceding the filing.

Again, as showing that the plain intent of congress was to vest the right of the applicant upon the actual compliance for five years, § 2297 provides that if at any time after the filing of the affidavit, as required in § 2290, and before the expiration of the five years mentioned in § 2291, it is proved after due notice to the settler, to the satisfaction of the register of the land office that the person having filed such affidavit has actually changed his residence or abandoned the land for more than six months at any time, then, in that event, the land so entered shall revert to the government. But it must be observed that there is no provision for any reversion to the government upon change of residence, or for any other reason, between the expiration of the five years and the expiration of the seven years allowed for the proof; showing conclusively that if the requirements of the law have been complied with up to the expiration of the five years allowed for that purpose, the right to the land has actually vested ; that all has been done by the applicant which the law requires, and that by applying the rule laid down by the supreme court of the United States in *Barney v. Dolph*, *supra*, the government simply becomes the trustee of the applicant to convey the legal title when the proof is formally given. To hold that it is the proof of the compliance rather than the actual compliance with the requirements of the law, which constitutes the rights of the applicant, is little less unreasonable than to hold that where a party takes a mortgage for security, the security itself does not attach until the execution of the mortgage is proven in a foreclosure suit, under a statute which requires the proof of such execution.

It is contended by the respondent that title does not pass from the United States by a conditional grant of public land so long as any requirement of the grantee, under a condition of the grant, remains uncompleted. I find no fault with this proposition, but my contention is that there was no

further act required of Bolton which was necessary to give him the right to the land ; that the right attached upon complying with the requirements of the act as to cultivation and residence ; but that the proof was only necessary to compel the publication and formal acknowledgment of this right in the shape of a patent ; or, in other words, to compel the granting of a paper title by the government.

I have examined the cases cited by respondents under this head, and do not consider them at all in point.  *Railway Co. v. McShane*, 22 Wall. 444, was a case where grant of lands had been made to a railroad company, and the state undertook to tax them, and the court held that the state had no power to tax the lands, and that the title had not passed because one of the conditions of the grant had not been complied with, inasmuch as the act had specially provided that the costs of survey must be paid before lands would pass to the company.  There the court held that the payment of costs of survey of the land is a condition precedent to a right to receive the title from the government, and that until such payment was made the equitable title of the company was incomplete.  "There remains," says the court, "a payment to be made to perfect it.  There is something to be done without which the company is not entitled to a patent."  But it will be seen that this was a substantial something.  The thing itself and not the proof of the thing, was to be done. A consideration was supposed to move towards the government for its grant.  A part of the consideration agreed upon was the payment of these costs of survey.  This part of the consideration had not been paid, and it seems to me that the court could not have come to any other conclusion than that the equitable title had not attached because the conditions had not been complied with altogether ; a different proposition from the one under consideration.

The same doctrine was announced in *Shepley v. Cowan*, 91 U. S. 330, in which it was held that where a settler seeks to acquire a right of preëmption to the lands that had been granted to a state under the eighth section of the act of congress of September 14, 1841, and which the state had sought

17-10W

to select as a part of said grant, the party taking the first initiatory step, if the same was followed up to a patent, acquired the better right to the premises ; and this case, when looked at carefully, sustains the position that I assume here, and announces the fact that the patent relates to the date of the initiatory act, and cuts off all intervening claimants ; going further really than is necessary to sustain the position of appellants here, that the patent relates back only to the period when all the conditions prescribed by the act had been complied with.

In *Frisbie v. Whitney*, 9 Wall. 187, it is decided that a vested right under the preëmption laws is only obtained when the purchase money has been paid, and the receipt of the proper land officer given to the purchaser ; that until this is done it is within the legal and constitutional competency of congress to withdraw the land from entry or sale, though this may defeat the imperfect right of the settler. I think this case cannot be construed as bearing on the case in question, as the payment for the land under the preëmption act is the principal consideration, and most certainly there is something substantial for the preëmptor yet to do when he has not paid the purchase price of the land.

The case of *Central Colorado Imp. Co. v. Commissioners*, 95 U. S. 259, does not seem to me to touch the case under consideration.

Respondent puts a suppositional case and asks, in case appellant had been to the land office and relinquished his claim to some other party after five years from the date of entry had expired, what would have become of the wife's vested right. We are not called upon here to answer that question, as appellant did not relinquish his right to the homestead, and the United States government is not a party in any respect, and is not demanding any rights by reason of any relinquishment, or at all. But it is purely a question between citizens of this state, under the community property laws which the state saw fit to enact. The objection by respondent that the community property law was not in effect at the time of the proof furnished by

Bolton, is answered by saying that the law providing for common property was in effect, and under its provisions the rights of these litigants would be affected in the same manner as they are under the community property laws.

It seems to me that if any intelligent effect or force is to be given to the community property laws of this state, not considering any questions which involve the rights of the government, but considering those only which involve the rights of these litigants as citizens of the state, it must necessarily follow that the heirs of Mrs. Julia Catherine Bolton are entitled to the interest which they demand in the property which was conveyed by Bolton ; and that there is no question of estoppel in this case, the claimants here being minors at the time the land was conveyed.

The judgment, in my opinion, should be reversed.