[No. 3095. Decided June 19, 1899.]

LIZZIE H. FORKER, *Appellant,* v. SAMUEL HENRY *et al.,*
*Respondents.*

SEPARATE ESTATE OF WIFE—HOMESTEAD ENTERED BEFORE MARRIAGE.

A homestead settled upon and improved by a woman before
marriage, who continued to reside there, together with her hus-
band, after her marriage, and to whom a patent was issued there-
for after final proof was made, is her separate property, under
§ 4489, Bal. Code, which defines the separate property of a wife
as her property and pecuniary rights "at the time of her mar-
riage, or afterwards acquired by gift, devise or inheritance, with
the rents, issues and profits thereof."

Appeal from Superior Court, Spokane County.—Hon.
ABRAHAM L. MILLER, Judge. Reversed.

*John R. McBride* and *Samuel R. Stern,* for appellant.
*W. J. Thayer* and *M. F. Mendenhall,* for respondents.

The opinion of the court was delivered by

REAVIS, J.—Action to recover possession of land. Ap-
pellant alleged her ownership and possession of two parcels
of land in Spokane county,—160 acres acquired under the
homestead laws of the United States and a half section
acquired by purchase from the Northern Pacific Railroad
Company,—and alleged that defendants wrongfully entered
into possession of 40 acres of each parcel, had erected a
saw mill and other buildings upon the premises, and were
cutting down standing timber growing thereon. Defend-
ants answered, denying the ownership in plaintiff of the
premises, and also set up affirmatively that appellant,
through her husband as her agent, made an oral contract
with defendants, the effect of which was that defendants
should cut the standing timber thereon and manufacture

it into laths and lumber, paying appellant therefor an agreed price for the timber so manufactured by them, which agreement was to continue in force about two years; that, in pursuance of such contract, defendants had entered upon said premises and erected their saw mill and other buildings thereon and had commenced to cut timber for the purpose of manufacturing it into laths and other lumber. Defendants also alleged that the premises described in the complaint were the community property of appellant and her husband, C. W. Forker.

1. . The motion to dismiss the appeal, because of an alleged defect in the bond, is not well taken; the defect pointed out was merely technical, and cured by the prompt offer of a bond correct in form. Upon the trial, the testimony disclosed that appellant was an unmarried woman when she filed upon the homestead, in 1883; that she settled upon and improved the homestead and continued to reside there, when, in 1887, she was married to C. W. Forker, her husband. Thereafter she and her husband resided thereon, and final proof was made upon the homestead. Patent issued to her in due course. Upon the facts thus shown, the superior court withdrew the 40 acres in suit from the consideration of the jury and determined, as a matter of law, that the homestead was community property of appellant and her husband, and that failure to join the husband as plaintiff in this action was fatal to its maintenance under § 4826, Bal. Code. Appellant excepted to the withdrawal from the case of the land acquired as her homestead, and the important question thus presented is whether, upon the facts shown, the homestead was separate property of the appellant or the community property of herself and husband. It is proper to further add that the facts shown disclose that, as between appellant and her husband, it was deemed her separate property. Counsel for respondents maintain that the ruling of the superior

court is sustained by decisions in this court, and those cited will be mentioned here.

*Kromer v. Friday,* 10 Wash. 621 (39 Pac. 229). In this case the court observed:

" In considering the character of the title, as to whether it was community land as a matter of fact, a question is raised as to when the title vested in Erskine D. Kromer. Final proof was made by him before the marriage ceremony aforesaid was performed, but the patent was issued thereafter. Although, for certain purposes, the title, at least the equitable title, was earned and accrued upon the making of final proof and receipt of the certificate, the full, or legal, title did not pass until the patent was issued. The plaintiffs claim that the patent should relate back to the time of making final proof, and that therefore the land vested in Erskine D. Kromer as his separate property, if in fact he was not then a married man. Undoubtedly, for certain purposes this would be true, but the doctrine of relation is a fiction of law adopted by courts solely for the purposes of justice. *Gibson v. Chouteau,* 13 Wall. 92. We are of the opinion that it should not be invoked in this case to defeat the claims of the widow. Her equities were as great as those of Erskine D. Kromer, or the children. It may fairly be inferred from all that transpired that there was no intentional wrong-doing upon the part of either of said parties; and that they were living together and regarded each other as husband and wife is apparent prior to the marriage ceremony aforesaid, and if necessary to save her rights in the premises we are satisfied that we would be justified in holding, and should hold, that the legal title having passed subsequent to the marriage of the parties, it vested in the community. A further question is raised, to the effect that title to the land under the homestead laws is taken by gift, and consequently that it would become the separate property of the husband under the laws of the territory. There seems to be some conflict in the authorities upon this proposition. As the matters hereinbefore discussed decide this case in favor of the defendants, we will not undertake to enter into any consideration of the cases bearing upon this question, but content

ourselves with saying we are satisfied that within the intent of our laws relating to community property, such land is in effect taken by purchase, by reason of the settlement and improvements thereon, in which the wife participates as well as the hsuband; and consequently, that this land was the community property of Erskine D. Kromer and his said wife."

But in that case it was shown that in an action in partition, in which all the parties and privies were before the court, it had been before determined that the land involved was community property, and it was held that such adjudication was final, estopped parties and their privies, and they would not be permitted to again litigate that question. It also appeared that the man and woman were living upon the premises before the initial step for filing was taken for their acquisition, and it was held that the fact of a marriage ceremony having been performed afterward,—that is, at the date mentioned after final proof,—did not negative the presumption that they were man and wife at the time the filing was made. Thus, the equities of the wife were cogent. She had lived with her husband upon the land from the initiation of the settlement, and the court assumed, in support of her equities, that the fact of a marriage ceremony made after final proof did not, for the purposes of the case, negative a pre-existing valid marriage.

The case of *Philbrick v. Andrews,* 8 Wash. 7 (35 Pac. 358), relates to a statutory homestead of the husband and its exemption from a judgment for alimony, and it was stated that the homestead was community property, acquired under the homestead laws of the United States.

In *Bolton v. La Camas Water Power Co.,* 10 Wash. 246 (38 Pac. 1043), the facts were as follows: Husband and wife established a residence upon a United States homestead in August, 1865, and lived thereon, in full compliance with the requirements of the law, until the 15th day of June, 1871, when the wife died, and final proof was

made on June 14, 1872, by the husband, and a patent thereafter issued to him. The husband thereafter married a second wife, and they together executed and delivered a warranty deed to the premises. The purchasers had no knowledge whatever as to the manner in which the title was acquired, further than was disclosed by the records of the auditor's office, which upon their face showed a perfect chain of title from the government to their grantors. The decision was put mainly upon the ground that the record title was perfect in the defendants and their grantors, they having no notice of any facts which tended to impugn the validity of such title and were purchasers for value. The conclusion reached was by a majority of the court, as then constituted, two members not concurring, and Chief Justice DUNBAR filing an elaborate dissenting opinion, and the principle stated has not since been reaffirmed.

The separate property of the wife is defined in § 4489, Bal. Code:

" The property and pecuniary rights of every married woman at the time of her marriage, or afterwards acquired by gift, devise or inheritance, with the rents, issues and profits thereof, . . . "

Had Mrs. Forker any property or pecuniary right in the premises at the time of her marriage? She had entered upon the land, qualified to enter it under the homestead laws of the United States. She remained in sole possession for four years, improved, cultivated and resided thereon. She had made expenditures of money, which was her own, in some improvements. She had such possession as entitled her to prevent trespass and intrusion on the premises, and, upon compliance with the full term of five years' residence, she was entitled to a patent.

In *Burch v. McDaniel,* 2 Wash. T. 58 (3 Pac. 586), it was adjudged that a promissory note executed by the purchaser of the right to possession of a settler upon a pre-

emption claim was founded upon valid consideration, and
it was observed by the court:

"Bare possession of anything of value of which ex-
clusive possession may possibly and lawfully be had, is
property, and is valuable, and ordinarily the transfer or
relinquishment of such possession is good consideration
for a contract."

It is apparent that the rule thus stated with reference
to possession of land under the pre-emption laws is equally
applicable to such possession under the homestead laws.
It would seem that, under the homestead laws, residence
and improvement are required as conditions precedent to
the grant of the title. It is evident that equities attach
upon such settlement and improvement which entitle the
settler to the continued possession and ultimate title. A
consideration of the authorities from those states in which
the community property law exists seems to establish the
principle, "If either spouse before the marriage has ac-
quired an equitable right to property, which is perfected
after marriage, the property is separate." There is per-
haps considerable uncertainty as to a uniform rule con-
cerning the right of the community to reimbursement, out
of the separate estate of the spouses benefited, for expendi-
tures of money and time and effort made in performing con-
ditions and perfecting and completing the title. But the
rule also seems to prevail in favor of the community as to
the title initiated during the community and perfected
after the dissolution of the marriage. In the first case, the
title takes effect as of time before the community, and the
property is therefore separate; and in the other as of a
time during the community, and is therefore community
property. Thus, in the case of *Barbet v. Langlois,* 5 La.
An. 212, the husband and wife intermarried in the year
1818. At the time of the marriage, the husband owned
and possessed a tract of land fronting on the Bayou

Plaqumine, under the title confirmed by the United States. In May, 1822, during the marriage, he purchased from the United States, by virtue of his right of preference as front proprietor, the double concession, or lands lying in the rear of his estate. By law, every person who owned a tract of land bordering on a river, creek, bayou or water course was entitled to a preference in becoming the purchaser of the vacant land adjacent to and back of his own tract, and three years were given to file applications, under the provisions of the act. The court observed, in holding that it was separate property:

" It is true that the land was not purchased from the United States until after Langlois' marriage. But the 'cause' of the acquisitions may be fairly considered as having preceded the marriage. It was because he was the owner of the front land, an ownership acquired long before, that under the liberal legislation of Congress he was allowed a preference to enter, and that too at a low price, specific lands, which may perhaps have been worth much more. We, therefore, think the land so acquired was his separate property."

In *Succession of Morgan,* 12 La. An. 153, the principle was again affirmed.

In the case of *Morgan v. Lones,* 80 Cal. 317 (22 Pac. 253), it was determined that the occupant of lands for whose benefit the townsite acts were passed had an equitable interest in the lands, and, if such occupant is an unmarried woman and marries, such interest is her separate property; and this is so, although the patent from the government to the municipal authorities has not issued. The property does not become community property from the fact that the husband advanced the funds necessary to get a conveyance from the municipal authorities. In support of the same principle are found the cases of *Harris v.*

*Harris,* 71 Cal. 314 (12 Pac. 274), and *Labish v. Hardy,* 77 Cal. 327 (19 Pac. 531).

In the case of *Gardner v. Burkhart,* 4 Tex. Civ. App. 590 (23 S. W. 709), Gardner, when unmarried, entered upon and improved 160 acres of land and made application therefor under the homestead laws of Texas, which, in the principle requiring residence and improvement, followed those of the United States, and thereafter divided the tract with a brother, but continued to live thereon. He afterwards married, and made application for 55 more acres adjoining the tract upon which he lived, and patent was issued to him therefor for the 135 acres, which he continued to occupy as a home. Upon these facts, it was held that the original 80 acres located and improved by Gardner was his separate estate; and a similar conclusion was reached in *Lawson v. Ripley,* 17 La. 238. In our state, the rents, issues and profits of separate property retain the separate character, while in Louisiana and Texas, deraigned from the Spanish ganancial system, these *acquets* went into the community. So here the improvements put upon the homestead by the appellant were her separate property, and whatever of value she added to the premises prior to her marriage, or after, from her separate estate, still continued her separate property. It is not disclosed by the testimony that the community contributed anything of value upon the premises.

We conclude that the superior court erred in its decision that the homestead was community property. It was, upon the facts disclosed, the separate property of the appellant.

2. The only exception found in the record here, to the instructions of the court, was to its action in withdrawing the homestead from the case, but numerous exceptions were taken to testimony admitted to show agency alleged to have been given the husband by the wife to make the contract set up by the defendants. Some of these exceptions were

well taken, for witnesses were permitted to state declarations of the husband which should not have been admitted, and, in view of the fact that the cause must be reversed and a new trial had, it is deemed proper, though no exception was taken to the instructions of the court, to suggest that the testimony at the trial seemed to determine, as a matter of law, that the lands purchased by appellant from the Northern Pacific Railroad Company were her separate property.

The cause is reversed and remanded for further proceedings not inconsistent with this opinion.

GORDON, C. J., and DUNBAR, ANDERS and FULLERTON, JJ., concur.