[No. 5772.    Decided December 27, 1905.]

R. CUNNINGHAM *et al., Respondents,* v. HARRY KRUTZ *et al.,*
*Appellants.*[1]

COURTS—FEDERAL QUESTION—RULE OF DECISION. As to what title
passes by a patent to a surviving husband and wife under the home-
stead laws, the decisions of the United States courts are conclusive
upon the state courts.

PUBLIC LANDS—HOMESTEAD—HUSBAND AND WIFE—TITLE OF SUR-
VIVOR. A patent issued under the homestead laws to the surviving
husband conveys the whole title to the husband, to the exclusion of
the heirs of the wife, under U. S. Rev. Stat., §§ 2291, 2292; since the
community property laws of the state cannot control the Federal
provisions as to such title, and do not apply.

Appeal from a judgment of the superior court for King
county, Bell, J., entered January 6, 1905, upon findings in
favor of the plaintiffs, after a trial on the merits before
the court without a jury, in an action for partition. Re-
versed.

*George Fowler,* for appellants.

*H. E. Foster,* for respondents.

HADLEY, J.—This is an action for the partition of real
estate. The plaintiffs allege that they are seized in fee
simple of the undivided half interest in the land, and that
the defendants Harry Krutz and Mary E. Foster are ten-
ants in common with plaintiffs in the ownership of the land.
The defendants Harry Krutz and wife, by their answer, deny
that the plaintiffs have any interest whatever in the land,
either as tenants in common with the defendants or other-
wise. They also deny that the defendant Mary E. Foster
has any interest in the land except that she holds a mortgage
thereon for $500. It is affirmatively alleged in the answer
that, in December, 1887, one Carlson made entry upon a
certain quarter section of land, which includes the land in

[1]Reported in 83 Pac. 109.

question, the entry being made under the homestead laws of
the United States; that he continued to reside thereon until
April, 1890, when he commuted the homestead entry, made
final proof, paid cash for the land at the government price,
received his final receipt therefor, and that, in due course
thereafter, a patent was issued to him by the United States;
that in July, 1890, said Carlson borrowed of one Thomas
S. Krutz the sum of $750, gave his note therefor, and to
secure the same, executed a mortgage upon said land, which
was duly recorded. Allegations are made showing the due
foreclosure of the mortgage by the assignee thereof against
that part of the land here involved, a conveyance of the land
under the foreclosure by the sheriff, and subsequent convey-
ances in direct line to the defendant Harry Krutz; that the
defendant Hattie Krutz was, at the date of the conveyance
to Harry Krutz, and still is, the wife of Harry Krutz, and
that said land became, by said conveyance, the community
property of the said two defendants. They ask that plain-
tiffs' complaint shall be dismissed. The answer of Mary E.
Foster denies that the plaintiffs have any interest in the
lands, and asks that their complaint be dismissed.

The reply avers, that the entry was made about December
21, 1887, and that from that time Carlson and wife were in
possession of, and resided upon, the land; that in 1890 the
wife of Carlson died testate, leaving a last will, which
was duly admitted to probate; that said wife left three chil-
dren as devisees under her will; that one of the children, an
infant, has since died intestate, and without issue; that on
the death of the wife and the probating of her will, the said
children, her devisees, became the sole owners in fee simple
of an undivided half interest in said land, and continued to
hold the same until March, 1904, when, by deed, the two sur-
viving children, together with their father, the surviving
husband, conveyed said undivided half interest to one Shea;
that thereafter said Shea and his wife conveyed to the plain-
tiffs. The cause was tried by the court, and resulted in a

judgment for the plaintiffs, declaring that they are the owners in fee simple of an undivided half interest in the land, and awarding partition thereof. The defendants have appealed.

From the foregoing it will be seen upon what the respective claims of title are based. The respondents contend that the deceased Mrs. Carlson had a devisable community interest in the land, and that they are the owners, by successive conveyances, of the interest so devised. Upon the other hand, appellants urge that when the patent issued to the surviving husband, it conveyed to him the entire title as his separate property, and that through the foreclosure of a mortgage given by the patentee, and successive conveyances thereunder, the appellants Krutz and wife are the holders of the entire title.

The trial court refused to receive and consider the offered evidence of appellants as to the giving and foreclosure of the mortgage, and as to the subsequent conveyances by which Krutz and wife claim title. It was the theory of the court that the land was the community property of Carlson and his deceased wife, and that, by the will of the latter, the undivided half passed to her children, through whom and their grantees it has come to respondents. Upon this theory the court treated appellants' offered evidence as immaterial and incompetent. Respondents, however, concede in their brief that, if the patent conveyed separate and not community property, they have no interest in the land.

The entry was made as a homestead entry, and within less than three years thereafter the wife died. The husband did not continue to reside upon the land the required time to perfect the homestead, but commuted his homestead rights after the death of his wife, and made final proof and cash payment in pursuance of which, in due course, a patent was issued to him. It therefore becomes necessary to determine whether the land was the separate property of Carlson or whether it became the property of the community, and it is proper that we shall first refer to our own decisions bearing

upon the question as to who obtains title from the United States through a homestead patent.

In *Kromer v. Friday,* 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671, Kromer made a homestead entry and an Indian woman lived with him as his wife. The required time of residence expired and final proof was made. After the making of final proof, a marriage ceremony was performed between Kromer and the woman, and soon afterwards a patent was issued to Kromer. It was held that the land became the community property of the two. The holding was, however, apparently based upon the theory that the fact that the two had been living together as man and wife, and that a marriage ceremony was subsequently performed, was not conclusive evidence that there was no previous marriage between them, and that the land therefore became community property, notwithstanding that final proof was made before the ceremony was performed.

In *Bolton v. La Camas Water Power Co.,* 10 Wash. 246, 38 Pac. 1043, it was held that, where the required time of residence upon a homestead had expired, and the wife afterwards died but before final proof and issuance of patent to the husband, the community acquired only an equitable estate, the husband taking the full legal title and, upon his conveyance to a grantee ignorant of the equities of the wife's heirs, both the legal and equitable titles passed.

In *Forker v. Henry,* 21 Wash. 235, 57 Pac. 811, it was held that, where a woman had settled upon and improved a homestead before her marriage, and final proof was made and patent issued to her after marriage, the land became her separate property, under our statute which defines as separate property of the wife all her property and pecuniary rights held by her at the time of her marriage. At the time of her marriage she had resided upon the land about four years, and although she was not then entitled to the legal title, the court seems to have considered that, on account of

13—41 WASH.

her previous settlement and improvements, such equities attached as entitled her to the ultimate title as her separate property, the further fact appearing in that case that, as between the husband and wife, the land was deemed to be the wife's separate property.

In *Ahern v. Ahern,* 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912, the husband and wife had resided upon the homestead more than six years, when the wife died. Final proof was made after her death, and the patent was issued to the husband. It was held that the land became community property. In *Towner v. Rodegeb,* 33 Wash. 153, 74 Pac. 50, 99 Am. St. 936, it was held that, where a settler upon unsurveyed public lands died, leaving no widow and without heirs who were citizens of the United States, the land was again open to settlement, since the heirs could not succeed by right of inheritance, but by virtue only of a preference right given them by the laws of the United States, if they had been duly qualified citizens. In *James v. James,* 35 Wash. 655, 77 Pac. 1082, the homesteader and his wife settled upon land, and three years afterwards the wife died. The husband completed the required residence and obtained a patent. It was said in that case that, one who had been legally adopted by the husband and wife as a son was the lawful heir of the deceased wife, and had an interest in the land.

It is possible that some of the expressions in the above cases may be said to support respondents' contention here, and perhaps the conclusions upon the facts in some of them justify the contention that the decisions are decisive of this case in favor of respondents. Be that as it may, we shall now refer to recent Federal decisions. In *McCune v. Essig,* 118 Fed. 273, the following facts existed: McCune settled upon land in this state as a homestead, and made entry thereon. Within a year he died intestate, his only surviving heirs being his widow and a daughter, who continued to reside upon the land the required time for the widow to com-

plete the homestead rights. Mrs. McCune, having become Mrs. Donahue by remarriage, then made final proof and a patent was issued to her. About a year after the issuance of the patent, she conveyed the land to the defendants in the case cited. Thereafter the daughter instituted the suit to procure a decree establishing that she was the owner of an undivided half of the land. Her contention was that, when the land was conveyed by the patent to her mother, it became the property of the community composed of her father and mother; that she, as the surviving heir of the father, succeeded to his interest, and that the interest was not conveyed by the mother's deed to the defendants in the action.

The suit was begun in the superior court of this state for Lincoln county, and was removed to the United States circuit court. That court retained the cause on the ground that the question in the case was one which must be resolved by the laws of the United States, and decided that the widow, upon the issuance of the patent to her, took the entire title as her separate property, and that there was no community interest to descend to the daughter. This ruling was affirmed by the United States circuit court of appeals, ninth circuit. *McCune v. Essig,* 122 Fed. 588. The same case on appeal to the supreme court of the United States was in all particulars affirmed by a recent decision, rendered November 27, 1905, and not yet published,[1] the opinion being written by Mr. Justice McKenna. From a copy of that opinion which has been placed before us, we here quote:

"The action of the lower courts on the motion to remand and on the merits are attacked by appellant to a certain extent on the same ground, to wit, that the laws of Washington determine the title of the parties, not the laws of the United States. The interest in McCune, acquired by his entry, it is contended, was community property, and passed to appellant under the laws of the state. Sections 4488, 4489, 4490 and 4491 of the Statutes of Washington pro-

1See, 199 U. S. 382, 26 Sup. Ct. 78. REP.

vide that property and pecuniary rights owned by either husband or wife before marriage, or that acquired afterwards by gifts, bequests, devise or descent, shall be separate property. Property not so acquired or owned shall be community property, and, in the absence of testamentary disposition by a deceased husband or wife, shall descend equally to the legitimate issue of his or their bodies. 1 Ballinger's Code. Relying on these provisions the argument of appellant is, and we give it in the words of her counsel: 'When William McCune entered this land he had not the legal title, but he had an immediate equitable interest and the exclusive right of possession until forfeited by failure to carry out the terms of his entry. *United States v. Turner,* 54 Fed. Rep. 228. The terms of his entry were carried out. The patent issued by reason of his entry. The state legislature had the right to direct to whom that equitable right and interest should pass. If the rights and interests under that entry had been forfeited, the state law would have no effect upon the title to the land. That equitable interest ripened, and was confirmed by the patent.'

"But this is begging the question. What interest arose in McCune by his entry, who could upon his death fulfill the conditions of settlement and proof, and to whom and for whom title would pass, depended upon the laws of the United States. *Bernier v. Bernier,* 147 U. S. 242 [13 Sup. Ct. 244, 37 L. Ed. 152]. The motion to remand was rightly overruled."

After quoting the Federal statutes relating to the conditions of homestead entries and settlement, Rev. Stat., §§ 2291 and 2292, the opinion further says:

"It requires an exercise of ingenuity to establish uncertainty in these provisions. They say who shall enter and what he shall do to complete title to the right thus acquired. He may reside upon and cultivate the land, and by doing so is entitled to a patent. If he die his widow is given the right of residence and cultivation, and 'shall be entitled to a patent as in other cases.' He can make no devolution of the land against her. The statute which gives him a right gives her a right. She is as much a beneficiary of the statute as he. The words of the statute are clear, and express who in turn shall be its beneficiaries. The contention of appel-

lant reverses the order of the statute and gives the children an interest paramount to that of the widow through the laws of the state.

"The law of the state is not competent to do this. As was observed by Circuit Judge Gilbert: 'The law of the state of Washington governs the descent of land lying within the state, but the question here is whether there had been any descent of land.' And, against application of the state law, the learned judge cited *Wilcox v. Jackson,* 13 Pet. 498, 517, and *Bernier v. Bernier, supra.* In the former it was said that whenever the question is whether title to land which had been the property of the United States has passed, that question must be resolved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then, like all other property in the state, it is subject to State legislation. In *Bernier v. Bernier* it was said that the object of sections 2291 and 2292 was 'to provide the method of completing the homestead claim and obtaining a patent therefor, and not to establish a line of descent or rules of distribution of the deceased entryman's estate.' See *Hall v. Russell,* 101 U. S. 503. And hence it was decided that Mrs. Donahue took the title free from any interest or right in the appellant under the laws of the state.

"Against the effect of the patent conveying title to Mrs. Donahue, appellant invokes the doctrine of relation. It is admitted 'that the title to the real estate in the case at bar passed and vested according to the laws of the United States by patent.' But it is contended that a beneficial interest having been created by the state law in McCune when the title passed out of the United States by the patent, it 'instantly dropped back in time to the inception or initiation of the equitable right of William McCune, and that the laws of the state intercepted and prevented the widow from having a complete title without first complying with the probate laws of the state.' This, however, is but another way of asserting the law of the state against the law of the United States, and imposing a limitation upon the title of the widow which section 2291 of the Revised Statutes does not impose. It may be that appellant's contention has support in some expressions in the state decisions. If, however, they may be construed as going to the extent contended for, we are unable to accept them as controlling."

There is no necessity for further reviewing the arguments of our own or of the Federal decisions. The above decision is final and conclusive that the question as to what title passed to Carlson must be resolved by the laws of the United States. Without regard to the community laws of this state, it follows from the decision that, when one makes a homestead entry and dies before completing the full residence period necessary under the homestead law, and leaving a widow who completes the period of residence, makes proof, and procures a patent, the land becomes the absolute separate property of such widow. In so far as our own previous decisions may be in conflict with the above, when applied to a similar state of facts, they must now be treated as overruled.

The facts in the case at bar are very similar to those in *McCune v. Essig, supra.* In the other case the husband died and the widow completed the homestead title; while in this one, the wife died within the third year of residence, and the husband commuted the homestead rights and made final proof, paying cash, and procuring patent to himself. If Carlson's title had been perfected as a homestead title, we should see no difference in principle by which to distinguish it from the *McCune* case. Our views upon this point were expressed in the case of *Hall v. Hall, ante* p. 186, 83 Pac. 108, as follows:

"True, the homestead law provides that the patent shall issue to the widow in such cases; but it seems inconsistent to hold that the widow acquires the entire title on the death of the entryman, and that the entryman only acquires an undivided one-half interest on the death of the wife, under identical circumstances. The manifest object of our community property system is to place the husband and wife on an equal footing as to their property rights, and perhaps the law should be so administered as to accord to each the same property rights on the death of the other."

The additional fact in this case, that Carlson commuted the homestead entry and paid cash for the land, strengthens appellants' position. By the consent and concurrence of

the United States, he relinquished the homestead entry and availed himself of the benefits of the law granting preemption rights. The title conveyed to him was based upon a new consideration passing from him to the United States, a consideration entirely different from the conditions which inhered in the homestead entry. We see no escape from the conclusion that Carlson took the title as his sole and separate property. It follows that respondents have no title to the lands in question and no cause of action.

The judgment is reversed, and the cause remanded, with instructions to enter judgment dismissing the action.

MOUNT, C. J., RUDKIN, FULLERTON, CROW, ROOT, and DUNBAR, JJ., concur.