## McCUNE v. ESSIG et ux.

### (Circuit Court, D. Washington, E. D. October 29, 1902.)

### No. 954.

1. REMOVAL OF CAUSES—FEDERAL QUESTION.

A suit by the daughter of a deceased homestead settler to recover an interest in the land, which after his death was patented to his widow under the homestead law, necessarily involves a construction of such law, and is removable on that ground.

2. PUBLIC LANDS—TITLE ACQUIRED UNDER HOMESTEAD LAW—EFFECT OF PATENT TO WIDOW OF SETTLER.

A patent issued to the widow of a homestead settler upon her making the final proof, in accordance with the provision of the homestead law, conveys the land to her absolutely, and no interest therein passes by inheritance to the children of her husband.

Suit in Equity. Heard upon motion to remand the case to the state court in which it was commenced, and upon a demurrer to the bill of complaint. Motion denied, and demurrer sustained.

The parties to this suit are all citizens of the state of Washington. The material facts averred by the amended bill of complaint are that the complainant is a minor and a daughter of William McCune, deceased, and his wife, Sarah McCune, now Sarah Donahue, and a stepdaughter of Daniel Donahue, who appears as her guardian ad litem; that her parents settled upon a quarter section of land, situated in Lincoln county, in this state, while they were living together as husband and wife, the land being then part of the public domain of the United States, and subject to entry under the homestead law, and after having made their settlement thereon William McCune on the 4th day of April, 1884, filed a claim to said land as a homestead in the proper district land office; that in the same year William McCune died intestate, his only surviving heirs being his widow and the complainant, who continued to reside upon the land until December 17, 1889, on which date the mother of complainant made the required proof in the land office of full compliance with all the requirements of the homestead law, and on the 6th day of March, 1891, a patent for said land was issued to her; that in the year 1892 Mrs. Donahue sold and conveyed the land to the defendants, and they have been in possession ever since, and have appropriated the rents, issues, and profits to their own use, and claim title to the whole of said land adversely to the complainant; that the value of the land is $6,400; and that the complainant is the owner of an undivided one-half thereof, and entitled to half the rents, issues, and profits thereof from the time defendants took possession. A copy of the patent is annexed to the amended bill of complaint as an exhibit, from which it appears that the grantee is described therein as "Sarah Donahue, formerly the widow of William McCune, deceased," and the granting words are as follows: "That there is therefore granted by the United States unto the said Sarah Donahue the tract of land above described, to have and to hold the said tract of land, with the appurtenances thereof, unto the said Sarah Donahue, and to her heirs and assigns, forever." The object of the suit indicated by the averments and prayer of the bill is to obtain a decree establishing the complainant's claim of title to an undivided one-half of the land; for partition; or, if that is impracticable, to have the land sold and the proceeds divided, and to recover one-half the rents, issues, and profits.

The homestead law, after prescribing the conditions under which public

¶ 1. Jurisdiction in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

lands may be entered and the manner of making entries, provides that no certificate shall be given or patent issued therefor until the expiration of five years from the date of the entry; "and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; * * * proves by two credible witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit," and makes an affidavit of nonalienation, and takes an oath of allegiance to the government of the United States, then "he, she, or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law." The law further provides as follows: "In case of the death of both father and mother, leaving an infant child or children under twenty-one years of age, the right and fee shall inure to the benefit of such infant child or children." Rev. St. U. S. §§ 2291, 2292. The laws of Washington territory, in force in the year 1884, and still in force as laws of the state of Washington, provide that all property acquired during coverture by either husband or wife shall be community property, and to dispose of or incumber community real estate the husband and wife must join in the execution of a "deed or other instrument of conveyance," and upon the death of either, leaving surviving children, if no testamentary disposition has been made of any part of the community property, one half thereof goes to the survivor and the other half descends to the children. 1 Ballinger's Ann. Codes & St. Wash. §§ 4488–4490, 4621.

This suit was commenced in the superior court of the state of Washington for Lincoln county by service upon the defendants of a summons and copy of the complaint on the 29th day of April, 1902. A stipulation was signed by the solicitors who have appeared for the respective parties, whereby it was agreed that an amended complaint should be filed, and that the defendants should have 30 days after service thereof within which to enter their appearance. Within the stipulated time the defendants filed a demurrer to the amended complaint, and at the same time filed their petition and bond for removal of the case into this court, on the ground that the amended complaint tenders an issue which requires for its determination the construction and application of specified provisions of the laws of the United States. A transcript of the record was filed, and the case docketed in this court in due time. The complainant has failed to file any new pleading in this court, but has moved to remand the case to the state court, alleging in the motion three grounds, viz.: "(1) The petition does not contain facts sufficient to warrant removal, nor to show that this court has jurisdiction; (2) the case does not involve any disputed question of federal law; (3) the controversy between the parties must be determined by the laws of the state of Washington." The court denied the motion to remand, and the case was thereupon argued and submitted upon a demurrer to the amended bill of complaint.

The complainant's case is grounded upon the theory that by the entry William McCune acquired a vested interest in the land; that the law entitles the widow of a deceased settler to receive the patent, but does not entitle her to any beneficial interest in the land greater than, or different from, her interest therein at the time of the entry; that the patent when issued relates back to the date of the entry and confirms the title of the settler as if the grant had been perfected and title conveyed on that date; that the community property law of this state operates uniformly upon all property acquired by married persons, including property acquired by grant from the government of the United States, so that in this instance the land in controversy is, by the doctrine of relation, to be deemed to have been acquired by Mr. and Mrs. McCune by purchase on April 4, 1884, and upon the death of William McCune in that year the title to an undivided one-half thereof passed by descent to the complainant. In their argument upon the motion to remand and upon the demurrer, the solicitors for the complainant contended that the several propositions above stated are settled by previous decisions of the supreme court of the United States, so that there is now no disputed question of federal law to be decided in adjudicating the rights of the parties to this suit.

Merritt & Merritt, for complainant.
Graves & Graves, for defendants.

HANFORD, District Judge (after stating the facts). The demurrer does not attack the bill of complaint on the ground of multifariousness, but is framed especially to raise the questions whether, under the homestead law, William McCune acquired any inheritable interest in the land, and whether the patent conveyed the title to the grantee in her own right, or constituted her a trustee for the complainant as to an undivided one-half of the land.

It appears to me that the vital question in this case is one of federal law. The government of the United States is the grantor of the title; the grant is made pursuant to the laws of the United States providing for the disposition of the public lands; the state of Washington is not a party to the grant; it never had power to legislate with respect to the disposition of the public lands of the United States within its boundaries; and the complainant does not deraign title from the state, but claims an undivided one-half of the estate conveyed by the patent, although her name does not appear in it, and she cannot brush the patent aside without impairing the foundation of her claim. If the patent could be eliminated, the complainant would then have to go back of the patent and rest her claim upon the law, and it is a national law and not a law of the state which must be applied and construed. In their argument upon the demurrer counsel for complainant called my attention to the following very excellent rule, found in the opinion of the supreme court in the case of Wilcox v. Jackson, 13 Pet. 517, 10 L. Ed. 264:

"We hold the true principle to be this: that whenever the question in any court, state or federal, is whether a title to land, which had once been the property of the United States, has passed, that question must be resolved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then that property, like all other property in the state, is subject to state legislation, so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States."

Under this rule, to bar the jurisdiction of a United States circuit court it is necessary for the complainant to admit not only that the title of the United States has been conveyed, but also that the title "vested according to the laws of the United States," and it is impossible to keep questions of federal law out of the case, without a plain admission that the patent conveyed the title to the patentee absolutely. That admission, if made, would leave no controversy for any court to settle. The complainant denies that the title vested in the patentee absolutely, and claims adversely to the patentee; therefore the question whether her claim is valid or not "must be resolved by the laws of the United States."

If it were true that the complainant's claim to an undivided one-half of the land in controversy rests upon settled principles of law, an easy way to prove it would be to cite decisions of the supreme court of the United States applicable to the facts of the case; but if the supreme court has ever decided that a homestead settler by his entry acquires

a vested interest in the land before he has fulfilled the conditions prescribed by the law, or that a patent issued to the widow of a deceased settler conveys any beneficial interest to the heirs of the deceased settler, or that any state law can be in any case effective, to divert the transmission of the title to public land from the national government to the one designated by the law to receive the patent, so as to vest the title in a person other than the patentee, my attention has not been directed to the decision.

All of the supreme court decisions cited in the argument in behalf of the complainant approach the questions in the case only remotely, and the general principles which they confirm are not applicable to the facts of this case. I will review them in chronological order.

Witherspoon v. Duncan, 4 Wall. 210–220, 18 L. Ed. 339, was a tax case, and the question was whether the land, which had been granted by an act of congress to individuals, could be taxed by the state before the patent issued; and the court decided that as the grantees had performed all the conditions precedent, and obtained a certificate of entry, the land was private property, and subject to taxation. In the opinion the court said:

"In no just sense can lands be said to be public lands after they have been entered at the land office and a certificate of entry obtained. * * * The contract of purchase is complete when the certificate of entry is executed and delivered, and thereafter the land ceases to be a part of the public domain. The government agrees to make proper conveyance as soon as it can, and in the meantime holds the naked legal title in trust for the purchaser, who has the equitable title. * * * The power to tax exists as soon as the ownership is changed, and this is effected when the entry is made on the terms and in the modes allowed by law."

In this decision the court applied the same principle which had previously been announced in the case of Carroll v. Safford, 3 How. 441, 11 L. Ed. 671, in which the lands affected had been acquired by cash entry to land donated by an act of congress. The entries referred to in these decisions were the transactions in the land office when the price was paid for the land by a purchaser, or when the final proof was made in compliance with conditions precedent to the acquisition of ownership under a donation law. Such entries are quite different from the transaction designated as a "homestead entry," which is the initial step taken in the land office towards acquiring ownership under the homestead law, and precedes the performance on the part of a homestead claimant of the conditions of residence upon and improvement of the land, which constitute the real consideration for the transfer of the title, and which are conditions precedent to the vesting of title in the homestead settler. Upon the argument it was confessed that the supreme court has not decided in any case that unpatented lands become subject to taxation by a state government before full compliance on the part of grantees with the requirements of the laws of the United States, which must precede the conveyance of title from the national government.

In the case of Shepley v. Cowan, 91 U. S. 330–340, 23 L. Ed. 424, the supreme court announced the rule that the party who is first in taking the initiatory step towards acquiring lands from the United States pursuant to laws enacted by congress, "if followed up to patent,

is deemed to have acquired the better right as against others to the premises. The patent which is afterwards issued relates back to the date of the initiatory act, and cuts off all intervening claimants." And the court also said in that case:

"But whilst, according to these decisions, no vested right as against the United States is acquired until all the prerequisites for the acquisition of the title have been complied with, parties may, as against each other, acquire a right to be preferred in the purchase or other acquisition of the land, when the United States shall have determined to sell or donate the property. In all such cases, the first in time in the commencement of proceedings for the acquisition of title, when the same are regularly followed up, is deemed to be the first in right."

In the preceding paragraph of the opinion reference is made to previous decisions of the court in Frisbie v. Whitney, 9 Wall. 187, 19 L. Ed. 668, and the Yosemite Valley Case, 15 Wall. 77, 21 L. Ed. 82, in which it was decided that settlers claiming lands under the pre-emption laws did not thereby acquire such a vested interest in the premises as to deprive the government of the power to include the lands which they claimed within a reservation for public uses or to make other disposition thereof.

The opinion in Shepley v. Cowan was written by Mr. Justice Field, and the doctrine of relation, to which reference is made, will be better understood by referring to the explanation of that doctrine which the same learned justice had previously given in the opinion of the supreme court in the case of Gibson v. Chouteau, 13 Wall. 100, 20 L. Ed. 534, as follows:

"By the doctrine of relation is meant that principle by which an act done at one time is considered by a fiction of law to have been done at some antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as a conveyance or deed. The last proceeding which consummates the conveyance is held for certain purposes to take effect by relation as of the day when the first proceeding was had. Thus, in the present case, the patent, which was issued in 1862, is said to take effect by relation at the time when the survey and plat of the location, made in 1818, were returned to the recorder of land titles under the act of congress. At that time the title of the claimant to the land desired by him had its inception, and so far as it is necessary to protect his rights to the land, and the rights of the parties deriving their interests from him, the patent is held to take effect by relation as of that date. The supreme court of Missouri, considering that by this doctrine of relation the legal title, when it passed out of the United States by the patent, instantly dropped back in time to the location of the first act or inception of the conveyance, and vested the title in the owner of the equity as of that date, held that the statute intercepted the title as it passed through the intermediate conveyances from that period to the patentee. 'The legal title,' said the court, 'in making this circuit, necessarily runs around the period of the statute bar, and the action founded upon this new right is met by the statute on its way, and cut off with that which existed before.' The error of the learned court consisted in overlooking the fact that the doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, and is only applied for the security and protection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title."

This court would commit a much more transparent error than the one pointed out in the decision of the supreme court of Missouri by granting a decree in favor of the complainant upon the theory

that by this doctrine of relation the legal title to the land in controversy, when it passed out of the United States by the patent to Mrs. Donahue, instantly dropped back in time to the inception of her deceased husband's claim, and that the community property law of this state intercepted the title as it passed from the United States to the patentee, and, operating in combination with the doctrine of relation, created a vested estate in a dead man.

In the case of Railroad Co. v. Whitney, 132 U. S. 357–366, 10 Sup. Ct. 112, 33 L. Ed. 363, the court held that a homestead entry valid upon its face, and regarded as legal by the officers of the land department, is such an appropriation of the tract as segregates it from the mass of public land, and excepts it from a subsequent grant by congress to a state for the purpose of aiding in the construction of a railroad, reaffirming the doctrine in the case of Wilcox v. Jackson, 13 Pet. 498, 10 L. Ed. 264, "that a tract lawfully appropriated to any purpose becomes thereafter severed from the mass of public lands, and that no subsequent law or proclamation will be construed to embrace it or to operate upon it, although no exception be made of it." The opinion contains an inaccurate statement, to the effect that in Witherspoon v. Duncan, 4 Wall. 210, 18 L. Ed. 339, and Carroll v. Safford, 3 How. 441, 11 L. Ed. 671, the court had held the rule that "lands originally public cease to be public after they have been entered at the land office, and a certificate of entry has been obtained," to be applicable "as well to homestead and pre-emption as to cash entries." This decision falls far short of being an authoritative declaration that the ownership of public land becomes changed by the initial filing in the land office of a homestead claim. It is in line with numerous decisions of the supreme court holding that homestead and pre-emption claims appearing of record in the land office except the tracts which they cover from grants made in aid of railroad construction, and it does not purport to be a decision of the question as to the time when a homestead settler acquires an inheritable interest in land.

Sturr v. Beck, 133 U. S. 541–552, 10 Sup. Ct. 350, 33 L. Ed. 761, involved a contest with respect to water rights between parties claiming title to separate tracts of land which had been patented under the homestead law, and in the decision the court again applied the familiar rule of equity that, in a contest between parties whose equities are in other respects equal, priority in time gives superiority of right. The condensed statement of the decision in the syllabus of the case is as follows:

"The filing of a homestead entry of a tract across which a stream of water runs in its natural channel with no right or claim of right to divert it therefrom confers a right to have the stream continue to run in that channel, without diversion, which right, when completed by full compliance with the requirements of the statutes on the part of the settler and the issue of a patent, relates back to the date of the filing, and cuts off intervening adverse claims to the water."

The decision quotes from an opinion by Attorney General Mac-Veagh, to the effect that, "where a homestead entry of public land has been made by a settler, the land so entered cannot, while such entry

stands, be set apart by the president for a military reservation, even prior to the completion of full title in the settler," and that the right of a homestead settler amounts to an equitable interest in the land, and until forfeited by failure to perform the conditions it must prevail not only against individuals, but against the government. The opinion also contains other quotations, and a general discussion of different features of the public land laws, but without adopting the decision of the attorney general referred to or announcing any rule of law applicable to the questions which this court has now to consider. The question in that case, as stated in the opinion of the court, was not as to the extent of a homestead settler's interest in his homestead as against the government, but was whether, as against his adversary, prior occupancy and settlement and entry was a lawful prior appropriation of the water in the stream flowing through his homestead. One paragraph of the opinion contains the following commentary on that part of the opinion in the case of Witherspoon v. Duncan which I have quoted:

"It may be said that this language refers to the certificate issued on final proof; but if the word 'entry,' as applied to the appropriation of land, means that act by which an individual acquires an inceptive right to a portion of the unappropriated soil of the country, by filing his claim (Chotard v. Pope, 12 Wheat. 586–588, 6 L. Ed. 737), the principle has a wider scope."

This is a mere suggestion rather than a conclusion or decision that under the homestead law a settler on public land by filing his preliminary application acquires anything more than an inchoate right. In the case of Dealy v. U. S., 152 U. S. 539–547, 14 Sup. Ct. 680, 38 L. Ed. 545, the supreme court recognized a substantial difference in the meaning of the word "entry" in cash purchase and preemption cases from the popular understanding of the word when used in connection with proceedings to acquire title under the homestead law, and gave to the word a broad interpretation according to popular understanding, comprehending the proceedings as a whole to complete the transfer of title, which in a homestead case is equivalent to an entry when land is sold by the government for cash.

In the case of Bardon v. Railroad Co., 145 U. S. 535, 12 Sup. Ct. 856, 36 L. Ed. 806, which is the last of the supreme court decisions cited in support of the argument in behalf of the complainant, the supreme court found the facts to be that the claim to the land in controversy was initiated in the year 1855; that the settler subsequently filed his declaratory statement, pursuant to the pre-emption laws, and after his death his heirs paid the purchase price for the land and a certificate of the entry was issued to them; that the entry remained of record in the land office until August 5, 1865, on which date it was canceled. Upon these facts, the court decided that the land was excepted from the grant made to the Northern Pacific Railroad Company by the act of congress of July 2, 1864, and that the cancellation of the entry in 1865 did not bring the land under the operation of the grant to the railroad company. The decision reaffirms the declaration, often repeated in the decisions of the supreme court, to the effect that when the records of the land department show that a tract of land has been claimed pursuant to law, and a right to it in-

itiated by a filing which is apparently regular, it is segregated from the mass of public lands, and until such claim has been extinguished such tract is deemed to be appropriated and excepted from any grant of public lands made while it is in that condition, and this is so whether the claim is valid in law or invalid for any reason. This rule of law is fully expounded in the later decisions of the supreme court in Whitney v. Taylor, 158 U. S. 85–98, 15 Sup. Ct. 796, 39 L. Ed. 906; Parsons v. Venzke, 164 U. S. 89–92, 17 Sup. Ct. 27, 41 L. Ed. 360; Railroad Co. v. Colburn, 164 U. S. 383–388, 17 Sup. Ct. 98, 41 L. Ed. 479; Same v. Sanders, 166 U. S. 620–637, 17 Sup. Ct. 671, 41 L. Ed. 1139; Same v. De Lacey, 174 U. S. 622–639, 19 Sup. Ct. 791, 43 L. Ed. 1111.

The decisions of the supreme court cited and relied upon, whether considered singly or with respect to any general rule deducible from all of them, do not support the contention that the complainant's claim of ownership to an undivided one-half of the land in controversy is founded upon provisions of the homestead law which have been construed and settled by the supreme court.

A vested right to a patent conveying the title to a tract of land is equivalent to a patent issued, and refers back to the inception of the right of the patentee, but only so far as it may be necessary to cut off intervening claimants. Stark v. Starr, 6 Wall. 418, 18 L. Ed. 925. This rule is not available to diminish the estate conveyed by the patent, nor to support a claim adverse to the patentee. No right to a patent is acquired under the homestead law, until all the conditions precedent prescribed by law have been fully performed. The death of a man who has initiated a right, occurring before he has fulfilled the prescribed conditions, intercepts his right; and then his widow, if there be a surviving widow, becomes his successor in right, and may complete what he has left undone, and become entitled to a patent conveying the full title to her in her own right as the direct grantee of the government, and not by inheritance from her deceased husband, and while she survives children can acquire no right to any interest in the homestead. This is the policy of the homestead law plainly expressed in its provisions. If the community property law of this state has any effect upon the rights of the parties in this case, it would apply as well to a supposable case where a man who at the time of filing his homestead application is a naturalized citizen and a widower, having alien children living in Europe, and who, while occupying the land and claiming it, becomes married to a second wife, and afterwards dies before the expiration of five years from the date of filing his homestead application. If the argument made in this case is sound, in the supposed case the homestead would be the husband's separate property, and the surviving widow, by fulfilling the requirements of the law and obtaining a patent, would become the owner of only an undivided one-third of the land, and the alien children would take the other two-thirds by inheritance from their deceased father, contrary to the intention of congress, expressed in the homestead law, to bestow the bounty of the government only upon citizens of this country who occupy and improve the portions which they receive.

The provisions of the homestead law are similar to the Oregon donation law, and the policy of the government is identical in both statutes, and it is my opinion that the decision of this case must be controlled by the case of Hall v. Russell, 101 U. S. 503–514, 25 L. Ed. 829, in which the supreme court construed the provisions of the donation law, and held that it made no grant of land to a settler until the completion of his residence upon and cultivation of the land for the prescribed period; that down to that time he was an authorized settler, but not a grantee; that upon his death prior to the expiration of that period his rights, but not the land, descended to his heirs; that upon making the required proof the heirs became entitled to a patent conveying the title to them as donees of the government, but that the title was not by inheritance from the deceased but by grant directly from the United States; and that a statute enacted by the legislature of Oregon territory, providing that a settler's claim might descend to his heirs as real estate, and that his possessory right might be disposed of by will, conflicts with the act of congress, and that the territorial government could not add to nor take from the grant. See, also, Hershberger v. Blewett (C. C.) 55 Fed. 170. Uniformity in the rules to be applied in the interpretation of similar statutes is desirable, and as the supreme court has not construed the homestead law differently I consider the principles of the decision in Hall v. Russell to be the safest and best which can be applied to it, and by those principles I am guided to the conclusion that a patent issued to a widow pursuant to the homestead law conveys the land to her absolutely, and that no interest therein passes by inheritance to children of her husband. Cooper v. Wilder (Cal.) 43 Pac. 591, 52 Am. St. Rep. 163.

The demurrer is sustained, and a decree will be entered denying that the complainant has any equitable right to, or interest in, the land described in her bill of complaint.