O'CONNELL et al. v. PINNACLE GOLD MINES CO.

(Circuit Court, D. Washington, N. D.    June 13, 1904.)

No. 1,057.

1. MINING CLAIMS—LOCATION—LOCATOR'S ESTATE—STATUTES.
    Rev. St. U. S. § 2322 [U. S. Comp. St. 1901, p. 1425]. declares that locators of mining locations on the public domain, their heirs and assigns, so long as they comply with the laws of the United States and with state, territorial, and local regulations not in conflict with the laws of the Unit-

<hr>

,.¶ 1. See Executors and Administrators, vol. 22, Cent. Dig. § 289.

ed States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, etc. *Held*, that since the mining laws of the United States did not restrict discoverers to a single claim, nor require them to apply for patents within any specified time or at all, and such laws authorized the assignment and taxation of such claims, on the death of the locator his unpatented claims passed under the statute to his administrator, as a part of his estate, and not to his heirs, as grantees of the government.

Action at law to recover possession of unpatented mining claims from a defendant holding as owner by right of purchase from the administrator of the estate of the deceased locator of the claims; the plaintiffs being alleged heirs of the deceased, and claiming ownership as grantees of the government, under section 2322, Rev. St. [U. S. Comp. St. 1901, p. 1425]. Heard on motion for judgment on the pleadings. Motion granted.

Victor E. Palmer and G. Ward Kemp, for plaintiffs.
James B. Howe and Metcalfe & Jurey, for defendants.

HANFORD, District Judge. The property which is the subject of controversy in this case consists of several mining claims situated in Okanogan county, in this state. Said claims were discovered and located under the mining laws of the United States by James O'Connell, deceased, who thereby acquired the possessory rights defined by section 2322, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1425], and had possession at the time of his death, but made no application to the government for the issuance of patents, and the title to the property remains vested in the United States. O'Connell died intestate in the year 1899, and the plaintiffs claim to be lawful heirs of said deceased, and entitled by inheritance to five-sixths of his estate, and that a sister of the deceased, Alice O'Connell O'Neill, is the only other heir, her share of the estate being one-sixth. The superior court of the state of Washington for Okanogan county appointed an administrator of the estate, and in the course of proceedings made a decree and order of distribution, whereby it was adjudged that Alice O'Connell O'Neill is the sole heir of James O'Connell, and entitled to receive all the residue of his estate, after paying debts and expenses of administration. The mining claims were sold by the administrator under an order of the superior court, and the defendant claims ownership thereof, deraigning its title through conveyances from the administrator and from Alice O'Connell O'Neill. The plaintiffs claim ownership of five-sixths of the mining claims, not by inheritance from James O'Connell, but as donees of the United States government. Their claim is based upon the following proposition: Section 2322, Rev. St. U. S., is a congressional grant of portions of the public lands of the United States, including veins and lodes containing valuable mineral deposits, in the same sense that other acts of Congress have been construed as grants of portions of the public domain to settlers who establish homes thereon, and cultivate and improve their claims; the grant in each case being conditional, so that no title passes from the government until fulfillment of the conditions prescribed; that, upon

the death of the locator of a mining claim before performance of the conditions essential to the acquisition of title, his possessory rights do not pass by inheritance, but in that event his heirs occupy the position of designated successors entitled to acquire the property as grantees of the government. The plaintiffs base their whole contention upon their construction of section 2322, Rev. St. U. S., the material portion of which reads as follows:

"Sec. 2322. The locators of all mining locations heretofore made or which shall hereafter be made, on any mineral vein, lode, or ledge, situated on the public domain, their heirs and assigns, where no adverse claim exists on the tenth day of May eighteen hundred and seventy-two, so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface-lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side-lines of such surface locations. *  *  *"

The rights claimed by the respective parties above outlined are set forth in the pleadings, and the case has been argued and submitted upon a motion filed by the defendant to strike parts of the reply to the defendant's answer, and for a judgment in favor of the defendant upon the pleadings. As the case hinges upon a question of law, and as the plaintiffs must prevail, if at all, upon the validity of the claim which they assert, this motion appears to the court to be in accordance with good practice, and presents the issue of law fairly for the court's consideration.

It is certainly true that, if the mining claims in controversy were not part of the assets of the estate of James O'Connell, no rights with respect thereto were transferred by the administrator's sale, and the defendant has no interest therein greater than Mrs. O'Neill's share. Whether the defendant acquired by conveyance from her all or only an undivided share of the property involves an important question of fact put in issue by the pleadings—that is, whether the plaintiffs are lawful heirs of James O'Connell; but, for the purpose of deciding the question raised by the motion, it will be assumed that they are lawful heirs, as they have alleged.

In support of their position, counsel for the plaintiffs have cited and rely upon decisions of the courts in cases arising under the Oregon donation law, and the several acts of Congress prescribing the manner of acquiring titles to public land by settlers thereon. Hall v. Russell, 101 U. S. 503, 25 L. Ed. 829; Hershberger v. Blewett (C. C.) 55 Fed. 170; McCune v. Essig (C. C.) 118 Fed. 273; Id., 122 Fed. 588, 59 C. C. A. 429. But it is the opinion of the court that those decisions are not authorities in point, for the reason that there is a radical difference in phraseology and intent between the laws under which those cases arose and the mining laws. I can find in the case of Black v. Elkhorn Mining Co., 163 U. S. 445, 16 Sup. Ct. 1101, 41 L. Ed. 221, cited by counsel for plaintiffs, no support whatever for their contention. In that case the Circuit Court for the District of

Montana, the Circuit Court of Appeals for the Ninth Circuit, and the Supreme Court, all agreed in deciding adversely to the plaintiff, a widow who sued to recover a dower interest in a mining claim which her husband had sold in his lifetime. The doctrine of that case seems to be that section 2322, Rev. St. U. S., grants no interest in a mining claim to the wife of the locator, and that, if he sells it, all rights which he acquired from the government are thereby transferred to his vendee, unincumbered by any possible future claim of the locator's wife to a dower interest therein, and that when the vendee of a locator obtains a patent the mere possessory right becomes merged in the paramount title.

The policy of the government has been to recognize the rights of discoverers of valuable mineral deposits to appropriate for mining purposes the ground embracing their discoveries, and to extract therefrom ores and precious metals without rendering any account to the government therefor. A great deal of valuable mining ground was appropriated and exhausted, without interference by the government, before Congress enacted any law granting mining privileges, or providing for the acquisition of titles to mining ground. The failure of the government to prohibit mining operations on the public domain was understood as an implied license, and the miners were not treated as trespassers. Forbes v. Gracey, 94 U. S. 762, 24 L. Ed. 313; Northern Pacific R. Co. v. Sanders, 49 Fed. 129, 1 C. C. A. 192.

The rights which miners exercised under the implied license prior to the year 1872 were exactly analogous to the rights which they now have under sections 2319, 2324, Rev. St. U. S. [U. S. Comp. St. 1901, pp. 1424, 1426], except that the acts of Congress are more specific in defining the limitations as to the quantity of ground which may be appropriated, and the manner of defining boundaries of mining claims, and the giving and recording of notices of the rights claimed. The mining laws do not restrict discoverers to a single claim, nor require them to apply for patents conveying the title to any claim within any specified time, or at all, and mining claims may be assigned, taxed, and sold under state laws for nonpayment of taxes, and transfers are not only permitted, but are legalized, so that the vendees succeed to all the rights of the original locators, and controversies with respect to possessory rights may be litigated in the courts while the government retains the original title, but all such controversies must be determined by the law of possession. See section 910, Rev. St. U. S. [U. S. Comp. St. 1901, p. 679].

In the opinion of the Supreme Court, by Justice Miller, in the case of Forbes v. Gracey, it is declared that the mineral land act embraced in sections 2318, 2352, Rev. St. U. S. [U. S. Comp. St. 1901, pp. 1423, 1441], is a recognition by Congress of the possessory rights of miners, "as ascertained among themselves by the rules which have become the laws of the mining districts as regards mining claims. * * * Those claims are the subject of bargain and sale, and constitute very largely the wealth of the Pacific Coast states. They are property in the fullest sense of the word, and their ownership, transfer, and use are governed by a well-defined code or codes of law, and are recognized by the states and the federal government." And in that case it

was further declared that a mining claim may be sold, transferred, mortgaged, and inherited, without infringing the title of the United States, and, further, that such a claim may also be subjected to a lien for taxes, and sold to enforce the lien. The doctrine of that decision has been reaffirmed by the Supreme Court in a number of cases. See Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735; Gwillim v. Donnellan, 115 U. S. 45, 5 Sup. Ct. 1110, 29 L. Ed. 348; Noyes v. Mantle, 127 U. S. 348, 8 Sup. Ct. 1132, 32 L. Ed. 168; Manuel v. Wulff, 152 U. S. 505, 14 Sup. Ct. 651, 38 L. Ed. 532.

In the case of Benson Mining Company v. Alta Mining Company, 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762, Justice Brewer, in delivering the opinion of the Supreme Court, quoted with approval an opinion of the Secretary of the Interior, in which that officer classified rights under the mining laws of the United States as follows:

"(1) Title in fee simple. (2) Title by possession. (3) The complete equitable title. The first vests in the grantee of the government an indefeasible title, while the second vests a title in the nature of an easement only. The first, being an absolute grant by purchase and patent, without condition, is not defeasible, while the second, being a mere right of possession and enjoyment of profits without purchase, and upon condition, may be defeated at any time by the failure of the party in possession to complete the condition, viz., to perform the labor or make the annual improvements required by the statute. The equitable title accrues immediately upon purchase, for the entry entitles the purchaser to a patent, and the right to a patent once vested is equivalent to a patent issued."

These decisions of the highest court are plain and emphatic, and conclusively settle the question as to the nature and extent of the rights acquired by a valid location of a mining claim pursuant to the laws of the United States. The law severs the right of possession and enjoyment from the title. Until the right to a patent has been perfected, and an equitable title acquired by full compliance with the laws on that subject, the government retains the title to all mines within the public domain. But while retaining the title and authority to make other disposition of the property, it allows discoverers to locate claims, and grants to locators, their heirs and assigns, the right to have exclusive possession of the surface within the boundaries of their claims, and to retain possession so long as work in developing the mine and making improvements thereon to the value of $100 shall be done annually upon each claim. The words of the grant, in so far as section 2322 is a grant, are comprehensive and technical, and are the words habitually used in conveyancing to convey to the grantee immediately all the rights intended to be conveyed. If the act granted a life estate to the locator, with remainder to his heirs generally, under the rule in Shelley's Case, the word "heirs" would be construed as a limitation of the estate granted, and not as a word of purchase, and the locator would take to himself the entire estate granted. A fortiori, that must be the effect of a grant in general terms to locators, their heirs and assigns.

Section 2322, Rev. St. U. S., does not purport to grant a fee-simple estate, nor any title whatever. It relates to the right of possession only, and it grants nothing to the heirs except the right to inherit, and they can only inherit the identical interests and rights

which shall have become vested in the deceased during his lifetime. Heirs are not designated as a class entitled to a first exclusive right to acquire the title to mining property from the government. Such a right would be incompatible with the locator's right of alienation, and incompatible with the rights of the several states to tax mining claims within their boundaries, and enforce payment of taxes by selling such claims. The sections of the law which provide for the acquisition of the titles to mining claims by patents contain no provisions similar to the provisions of other laws giving to widows and children of deceased settlers preferred rights to obtain patents.

It is the opinion of the court that the mining claims in controversy, and all the rights with respect thereto granted by section 2322, Rev. St. U. S., were fully vested in James O'Connell, and were his property during his lifetime, and said claims were a part of the assets of the estate of James O'Connell, which the administrator of said estate could lawfully take into his possession and dispose of in the administration of the estate, the same as any other assets, and that, as against the purchaser of said claims at a lawful judicial sale by the administrator, the plaintiffs have no legal or equitable rights. They have no rights to nor interest in the mining claims as donees or grantees of the government of the United States, and therefore they cannot maintain this action.