WOODWARD v. DAVIDSON et ux.

(Circuit Court, W. D. Washington, N. D.    February 14, 1907.)

No. 1,395.

1. SPECIFIC PERFORMANCE—SUIT BY PURCHASER—PARTIES.

In a suit by a purchaser to enforce specific performance of a contract to convey real estate the wife of the vendor, although not a party to the contract, may be joined as a defendant where it is alleged that she has no proprietary interest in the property, and it is sought by the decree to debar her from claiming such interest.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 342, 345.]

2. JUDGMENT—CONCLUSIVENESS OF ADJUDICATION—JUDGMENT ON DISMISSAL.

A judgment of dismissal entered on motion of the plaintiff is not conclusive on the merits, and does not bar a second suit on the same cause of action.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, § 1030.]

3. SPECIFIC PERFORMANCE—CONTRACTS ENFORCEABLE—MUTUALITY OF OBLIGATION.

A contract for the sale of real estate, signed by the vendor, but not by the purchaser, may be specifically enforced by the latter where based on a valuable consideration, as where a part of the purchase money is paid down which is to be forfeited to the vendor in case the purchaser fails to complete the purchase within a stated time.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 89–99, 126.]

4. VENDOR AND PURCHASER—VALIDITY OF CONTRACT—PURCHASE BY BROKERS.

A contract for a sale of real estate made between the owner, and a firm of real estate brokers with whom the owner had listed it for sale, is valid and enforceable where there was no fraud or deception practiced, and the brokers fairly stated to the owner the fact that they did not purchase for themselves, but on an order from another broker for a principal whose name they were not at liberty to disclose.

5. SPECIFIC PERFORMANCE—PERSONS ENTITLED TO MAINTAIN SUIT—TRUSTEE.

Complainant was appointed by a railroad company, its trustee to acquire real estate for its use.    Through a broker, he obtained a contract for the purchase of a tract of land running to another firm of brokers, a part of the purchase price being paid down from money of the railroad company,

and the contract was afterward assigned to him. *Held*, that he was entitled to maintain a suit in his own name for specific performance of the contract for the use of his cestui que trust.

[Ed. Note—For cases in point, see Cent. Dig. vol. 44, Specific Performance, §§ 38–43.]

6. HUSBAND AND WIFE—COMMUNITY PROPERTY—WASHINGTON STATUTE.

Pierce's Code 1905, §§ 3867, 3875, 3876, 3877 [Ballinger's Ann. Codes & St. §§ 4488, 4489], relating to the property of husband and wife, provide that "property and pecuniary rights owned by a husband before marriage * * * shall not be subject to the debts or contracts of his wife but he may manage, lease, sell, convey, incumber or devise by will such property without the wife joining * * * as fully and to the same effect as though he were unmarried." They contain similar provisions with respect to the property of the wife, and further provide that property not so owned, but which is acquired after marriage by either husband or wife, or both, shall be community property, and cannot be sold, conveyed, or incumbered by the husband, unless the wife joins with him in the instrument of sale or conveyance. *Held*, under the decisions of the Supreme Court of the state, that real estate held by a husband at the time of his marriage, under a contract of purchase on which he had paid a part of the purchase price, and to which he afterward acquired the legal title on payment of the remaining installments, in part with money of his wife, and in part with money which was community property, did not become community property, but remained the separate property of the husband, and that a contract for the sale of the same, executed by him alone, was valid and enforceable.

Suit in equity to compel a vendor to specifically perform his contract to sell real estate. Heard on the merits. Decree for complainant.

H. H. Field, Blaine, Tucker & Hyland, and Hughes, McMicken, Dovell & Ramsay, for complainant.

William Martin, for defendants.

HANFORD, District Judge. This is a suit to compel specific performance of a written contract signed by the defendant J. D. Davidson, for the sale of four lots in the plat of the Seattle tide lands, for the price of $20,000, less a broker's commission of $1,000. The contract is definite and clear in describing the property sold, and in specifying the price to be paid, and the terms and conditions essential to entitle the purchaser to a complete transfer of the title, and it has been clearly proven that the contract was executed by J. D. Davidson, and that at the time of executing it he received the sum of $1,000 as earnest money and part payment for the property, and that a few days after executing the contract in performance of one of the conditions on his part he delivered an abstract of the title. It is also a conceded fact in the case that a few days after delivering the abstract of title Davidson offered to return the $1,000, which he had received as earnest money, and gave notice that he would not convey the property under the contract. The important stipulations in the contract are as follows:

"The balance of the purchase price, amounting to nineteen thousand dollars, to be paid on or before the 25th day of June, 1904, less a commission of five per cent. (5%) on the total purchase price. * * * If the title to said premises is not good or cannot be made good within thirty days, this agreement is void, and the earnest money receipted for shall be refunded. But if the title to said premises is good, and the purchaser neglects or refuses to comply with any of the conditions of this sale within thirty days after the delivery of the

abstract, then the earnest money receipted for shall be forfeited to J. D. Davidson, the owner of said premises, and this contract shall thereupon become null and void. The property is to be conveyed by a good and sufficient deed of conveyance, free and clear of all liens and incumbrances, to date hereof of every nature whatsoever, except assessments for street improvement purposes, which said assessments, if any, are to be assumed by the purchaser."

The property being tide land; that is, land over which the tide ebbs and flows, is subject to an expense for filling to make it available for use. The contract contains a further stipulation that the purchaser assumed the whole of this expense, including any interest that may have been paid by the seller on bills for filling. Young & Paine are named in the contract as the purchasers, and it is also a conceded fact in the case that Young & Paine are a firm engaged in business as real estate brokers, and that, at the time of executing the contract, J. D. Davidson was informed that they were not buying the property for themselves, but were making the purchase under an order from another real estate broker, and that they were not at liberty to disclose the name of the real purchaser.

The defendants were married at the time when the contract was executed, and, as Mrs. Davidson did not sign the contract, one of the defenses relied upon is that the contract is void, for the reason that, under the laws of this state, a contract to sell community real estate is void if not assented to by both members of the marital community. The chief controversy in the suit is whether the property was in fact community property of the defendants. Other material facts, affecting this main controversy, will be stated after I have disposed of the minor points included in the contentions of the defendants.

One of these contentions is that Mrs. Davidson is not a party to the contract, and therefore not a proper party defendant in this suit; for the reason that she cannot be required to convey any interest which she may have in the property to the plaintiff. It is the opinion of the court that this contention cannot be sustained. It appears by the pleadings and the arguments that there is a real controversy as to whether or not the property, which J. D. Davidson contracted to sell as owner thereof, was his separate property, or community property of himself and wife, and the question as to the validity of the contract, and the right of the complainant to have it enforced by a judicial decree, comprehends that controversy. Although Mrs. Davidson is not a party to the contract, she is a party to the controversy, and therefore entitled to have her day in court. The complainant does not ask for a decree, requiring Mrs. Davidson to execute a conveyance, but disputes her claim to a proprietary interest in the property, and has made her a defendant, for the purpose of obtaining a decree, which will be an estoppel against the assertion of such claim on her part.

Another contention of the defendants is that all the questions which the complainant is attempting to litigate in this suit are res judicata, by reason of previous litigation involving the same questions between the same parties in the superior court of the state of Washington for King county. It is the opinion of the court that the defendants' pleadings, as well as the evidence, are insufficient to support this claim. There is no averment in the cross-bill that there was a final judgment

on the merits rendered by the superior court, and the record of the suit in the superior court introduced in evidence shows that the suit was, on plaintiff's motion, dismissed without prejudice, and that there was no decision on the merits of the controversy. That kind of a dismissal of a suit does not constitute an estoppel. 24 Amer. & Eng. Encyc. Law (2d Ed.) pp. 803–806, and authorities cited in notes on pages 804–806.

The contract was not signed by the purchaser, nor in his behalf, and that failure is assigned as ground for asserting that the contract is void for want of mutuality. The argument on this point is based entirely upon a popular fallacy that a vendor's executory contract to sell real estate cannot be specifically enforced if the vendee is not obligated to consummate the purchase. The fallacy consists in the failure to observe the distinction between a mere option given without consideration, which, in legal effect, is nothing more than an offer which may be withdrawn at any time before the vendee tenders performance of the conditions of the option, and a contract to sell, made immediately obligatory by the giving and acceptance of a valuable consideration, as in this instance, where part of the purchase price was actually paid at the time of the execution of the contract, and which, by the terms of the contract, was to be forfeited to the vendor if the vendee defaulted in payment of the balance of the purchase price within a specified time. An option to buy real estate given for a valuable consideration is, in the eyes of the law, sacred as any other lawful contract, and is enforceable by a suit in equity. 21 Amer. & Eng. Encyc. Law (2d Ed.) pp. 928, 930, 935; 26 Amer. & Eng. Encyc. Law (2d Ed.) p. 31; Watts v. Kellar, 56 Fed. 1, 5 C. C. A. 394; Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501.

The defendants' brief contains an elaborate argument to establish the proposition that the contract may be avoided for fraud, in this: That Young & Paine acted in a dual capacity as agents for Davidson, and as agents for the purchaser. A clear statement of the facts showing the relationship of the parties is all that will be necessary to refute this argument. Young & Paine did not make the contract for Davidson, nor assume any authority to sell his property, nor control his action. The evidence proves affirmatively that Davidson is a man of mature years, and possessed of at least ordinary business intelligence and resolution, and all the pretences that his will in the matter was overcome by undue pressure exerted by Young & Paine are disproved by a preponderance of the evidence. In fact, there is no competent evidence tending to sustain these pretences. The leading questions propounded by his attorney in an effort to establish these conclusions were objected to, and the objections have been sustained by the court. Young & Paine were real estate brokers. Previous to the execution of the contract, the property had been listed at their office for sale. When they found a purchaser, Davidson was notified, and, acting for himself as owner of the property, he signed the contract, which is partly printed and partly written, after alterations in the printed phraseology had been made to secure for himself a forfeiture of the earnest money paid, in case the purchaser should make default in pay-

ment of the balance without any deduction of broker's commission. Young & Paine acted in perfect good faith. They informed Davidson that they were not buying the property for themselves, but that they had received an order to purchase it from another broker, and that they were not at liberty to disclose the name of the real purchaser, and it is manifest that at that time Davidson did not care who bought the property.

The right of the complainant to maintain this suit, as trustee for the Chicago, Milwaukee & St. Paul Railway Company, is disputed, and the argument in support of this point is on the following lines: Woodward did not personally participate in the negotiations, and Young & Paine did not know him in the transaction. The evidence proves, however, that with his consent, the Chicago, Milwaukee & St. Paul Railway Company constituted him a trustee in acquiring property for its use in the state of Washington. McLaren acted as a broker in purchasing the property for the railway company, and it was at his request that Young & Paine secured the contract from Davidson. The earnest money which Davidson received through Young & Paine and McLaren, as intermediaries, was the railway company's money, and by reason of the investment of the railway company's money in making the purchase, there was immediately a resulting trust in favor of the railway company as the party entitled to the benefit of the bargain. It had a lawful right to require the title to be transferred to and become vested in its appointee. The contract was formally assigned in writing by Young & Paine to Woodward long prior to the commencement of this suit. There appears to be no technical nor substantial grounds for contesting his right to maintain the suit for the benefit of his cestuis que trust; there being no conflict of interests nor controversy between trustee and cestuis que trust to embarrass the court in rendering a decree which will bind all parties having rights or claims which will amply protect the defendants from being harassed by other litigation. Carey v. Brown, 92 U. S. 171, 23 L. Ed. 469; 15 Encyc. Pl. & Pr. pp. 627, 639; 22 Encyc. Pl. & Pr. pp. 157, 163. The defendants' contention that the contract was not delivered as a completely executed instrument, but left in the custody of Young & Paine to become effective only in case Mrs. Davidson could be·induced to sign it, is refuted by an overwhelming weight of evidence. The contract speaks for itself, and proves that it was not contemplated by the parties that Mrs. Davidson should sign, for she is not named nor referred to in it. J. D. Davidson received a check for the earnest money, signed the contract, and left it in the possession of Young & Paine, the ostensible vendees, and afterwards cashed the check, and delivered an abstract of the title to Young & Paine. These are incontestable facts, inconsistent with a delivery of the instrument in escrow, and all evidence offered for the purpose of proving that there was not an absolute delivery is incompetent, and illegal. Blewett v. Front St. Cable Ry. Co. (C. C.) 49 Fed. 126.

Points 1, 2, 3, 5, and 11, stated in the defendant's brief, are obviously mere efforts of a zealous solicitor to build up defenses upon imaginary grounds. Further comment on these points is unnecessary.

There now remains to be considered only the main question in the case, viz.: Were the lots described in the contract the community property of the defendants? To simplify the case, I will now set forth the material facts upon which the decision of this question must be grounded, in chronological order. They are as follows: March 25, 1895, William Laack filed with the commissioner of public lands of the state of Washington an application to purchase the lots in question, and other tide-land lots, claiming a preference right to purchase under the laws of the state, by reason of his ownership of the abutting upland, and ownership of valuable improvements. There appears to have been two conflicting applications affecting the lots in question, or part of the same, and, on September 9, 1896, the board of state land commissioners certified an award of the right to make the purchase to Laack, and rejected both of the conflicting applications. Laack's preference right to make the purchase was a valuable right, which he could lawfully sell and transfer, and in the year 1896 he did sell to the defendant J. D. Davidson his right to purchase part of the lots included in his application, for which Davidson paid him $80. January 11, 1897, the state sold the lots in question to the defendant J. D. Davidson, for the price of $256, payable in 10 installments; and the first installment, amounting to $25.60 was paid on that day. January 19, 1897, the defendants were married. January 27, 1897, Laack gave a quitclaim deed to J. D. Davidson of the lots in question, and other lots included in his application, for an expressed consideration of $1, but he received no actual payment therefor other than the $80 which had been paid to him by Davidson in 1896. February 23, 1897, the commissioner of public lands of the state issued to J. D. Davidson a contract for the sale of the lots in question, for the price of $256, and acknowledged payment of the first installment of the purchase price, to wit, $25.60. October 6, 1900, the state, by deed, conveyed to J. D. Davidson its title to all of the lots described in the quitclaim deed given by Laack to Davidson, including the lots in question. The balance of the purchase price for all of said property was paid to the state at different times between February 23, 1897, and October 6, 1900. The money used in making said deferred payments included some of Mrs. Davidson's money which she had earned previous to her marriage, and money which was community property of the defendants. The necessary conclusion to be drawn from these facts is that the defendant J. D. Davidson initiated a right to acquire the property previous to his marriage by his contract with Laack, the payment of $80, his purchase from the state, and the payment of $25.60, as part of the purchase price, which right was never abandoned, but was perfected and developed into a complete title subsequently to his marriage.

By the statutes of this state, "property and pecuniary rights owned by the husband before marriage, and that acquired by him afterwards, by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, shall not be subject to the debts or contracts of his wife, but he may manage, lease, sell, convey, incumber, or devise by will such property without the wife joining in such management, alienation, or

incumbrance as fully, and to the same effect, as though he were unmarried." And there is a similar provision, respecting the property and pecuniary rights owned by a woman before marriage, and that acquired by her afterwards by gift, bequest, devise or descent, and the rents, issues and profits thereof. It is further provided that property not acquired, or owned as prescribed in the sections referred to defining the separate property rights of married persons, acquired after marriage by either husband or wife or both, is community property; and it is further provided that:

"The husband has the management and control of the community real property, but he shall not sell, convey, or incumber the community real estate unless the wife joins with him in executing the deed or other instrument of conveyance by which the real estate is sold, conveyed or incumbered." Pierce's Code 1905, §§ 3867, 3875, 3876, 3877 [Ballinger's Ann. Codes & St. §§ 4488, 4489.]

The defendants' argument treats as community property all acquisitions subsequent to marriage, and assumes that payments of installments of the purchase price of property out of community funds, and the conveyance of the title to property paid for in that manner subsequent to marriage, fixes the time of the acquisition, and gives the property a status as community property. Under this theory, the pecuniary rights of a husband or wife owned before marriage, with respect to property partly paid for, would be eliminated by merging into the after acquired title. But the law is different. The words of the statute explicitly exclude the idea of merger of existing rights into titles subsequently transferred. All pecuniary rights which a husband owns before his marriage remain subject to his exclusive power of disposition, and it is a necessary consequence that whatever additions and enlargements pertain to such antenuptial pecuniary rights, instead of extinguishing the original right by absorption, merely enrich the proprietary interest of the owner of the right. The decisions of the Supreme Court of the state of Washington cited in the brief filed in behalf of the complainant have, in construing the community property law of this state, applied the doctrine of relation by which the complete title is deemed to have become fully vested at the time of the initiation of the original right to acquire the title. Forker v. Henry, 21 Wash. 235, 57 Pac. 811; Ahern v. Ahern, 31 Wash. 334, 71 Pac. 1023, 96 Am. St. Rep. 912. In those cases the court was called upon to deal with titles acquired from the government of the United States pursuant to the laws of the United States, and there is possible ground for supposing that, on the question as to the application of the community property law of the state to cases involving titles acquired pursuant to the laws of the United States, said decisions are in conflict with the decisions of the federal courts in the case of McCune v. Essig (C. C.) 118 Fed. 273; Id., 122 Fed. 588, 59 C. C. A. 429; Id., 199 U. S. 382, 26 Sup. Ct. 78, 50 L. Ed. 237, and overruled by Cunningham v. Krutz, 41 Wash. 194, 83 Pac. 109. It is unnecessary, however, to enter upon a discussion of that question. The present case involves only a title acquired under statutes of the state, and the decisions of the state Supreme Court referred to give effect to a recognized rule of law as being applicable in the inter-

pretation of the statutes of the state, which define the rights of married persons with respect to their property and makes that a rule of property in this state, which the federal courts must observe.

In suits for the specific performance of contracts, courts of equity are required to exercise discretion, and a complainant has not a right to demand the enforcement of a contract where injustice will be done. That rule, however, does not stand in the way of granting the relief prayed for by the complainant in this case. The property has no peculiar value to Davidson. He bought it as a speculation, and has held it without making any use of it. The price for which he sold it made him a profit so large that his avarice was stimulated; and, prompted by avarice and the hope of extorting a more exorbitant price for the property from a party that needs it for immediate use, he has made this attempt to repudiate a fair contract. The price stipulated to be paid was the full market value at the time of the contract, and the complainant has in good faith offered to do complete equity by the payment of the full amount of the stipulated purchase price, including the cost of filling, and interest on the payments made by Davidson on account of that expense; and it is the opinion of the court that, in law and morals, it is fairly entitled to have a decree, granting the relief sued for against both of the defendants.

If there is any dispute between the parties as to the amount of money tendered being the full amount which Davidson is entitled to receive, the case will be referred to the master to make a computation; otherwise, a decree will be immediately entered in accordance with this opinion.